IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

**BETH and DAVID PETIT,** in their
individual capacities and as next friends to their
minor son, H. P.,
12 Emery Lane
Stratham, NH 03885

and

**NICOLE and BENNIE UNDERWOOD,**
in their individual capacities and as next
friends to their minor daughter, A.U.
9936 Castleglen Lane
Knoxville, TN 37922

Plaintiffs

v.

**UNITED STATES DEPARTMENT OF
EDUCATION**
400 Maryland Ave, SW
Washington, DC  20202

and

**MARGARET SPELLINGS,** in her
official capacity as Secretary of the
United States Department of Education
400 Maryland Avenue, SW
Washington, DC  20202

Defendants.

CASE NO. _____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, Beth and David Petit and Nicole and Bennie Underwood, by their

undersigned counsel, hereby bring this Complaint against Defendants United States Department

of Education ("Department"), and Margaret Spellings, in her official capacity as Secretary of the United States Department of Education, and allege as follows:

## NATURE OF ACTION

1.      Plaintiffs bring this action for declaratory and injunctive relief to vindicate their rights and the rights of their minor children under the Individuals with Disabilities Education Act ("IDEA").  20 U.S.C. §§ 1400, *et seq.*

2.      H. P. and A.U. were born deaf, but each is now able to recognize and interpret sounds with the aid of a cochlear implant.  This device's proper functioning, however, requires periodic programming of its external speech processor.  This programming, which is referred to as "mapping," must be performed by a licensed audiologist with special training in cochlear implants.

3.      Because of their deafness, H. P. and A. U. are eligible to receive special education and related services under IDEA.  Under this statute, their school districts must create an "individualized education program" ("IEP") to ensure that they receive the services necessary to provide a meaningful education.  Until recently, their IEPs included mapping of their cochlear implants.  Their respective school districts, however, are no longer providing them with mapping services based on regulations adopted by the Department.  71 Fed. Reg. 46760, 46764 (Aug. 14, 2006), 34 C.F.R. §§ 300.34(b), 300.113(b).  These regulations exclude the mapping of a surgically implanted device, such as a cochlear implant, notwithstanding the plain language of IDEA and the legislative history of the 2004 amendments to that statute, which establish that Congress intended mapping to be provided.

4.      Under IDEA, a school district must provide "audiology services" as part of the "related services" required by the statute.  20 U.S.C. § 1401(26)(A).  The ordinary meaning of

2

the term "audiology services" includes a service like cochlear implant mapping, which can only be provided by licensed audiologists. Although as a result of the 2004 amendments the definition of "related services" excludes "a medical device that is surgically implanted, or the replacement of such device," the statute does not create an exception for the mapping of a surgically implanted device. § 1401(26)(B).

5. The legislative history of the 2004 amendments to IDEA confirms that Congress intended cochlear implant mapping to be provided as a "related service[]." Congress rejected a proposed amendment that would have excluded "programming" of surgically implanted devices from the definition of "related services" and thus made clear its intent to retain cochlear implant mapping as part of the "related services" provided by IDEA.

6. Despite the statutory language and legislative history, the Department issued regulations excluding cochlear implant mapping from the definition of "related services" and asserting that local agencies are not responsible for maintaining or programming these devices. 34 C.F.R. §§ 300.34(b), 300.113(b). In adopting these regulations, the Department chose not to implement the version of the bill ultimately passed by Congress and signed by the President. Instead, the Department issued regulations creating an exception similar to the one overwhelmingly rejected by the Senate.

7. The Department's regulations excluding cochlear implant mapping are at odds with the plain language of the statute, its legislative history, and the Supreme Court's instruction that when "Congress has directly spoken to the precise question at issue . . . [and] the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. NRDC*, 467

U.S. 842-43 (1984). In adopting these regulations, the Department acted in an arbitrary and capricious manner, in excess of its statutory authority, and not in accordance with law.

## PARTIES

8. Plaintiffs Beth and David Petit reside in Stratham, New Hampshire. They bring this suit both in their individual capacities and as next friends to their eleven year old son, H. P., who is eligible for, and receiving, special education services under IDEA because he is deaf.

9. Plaintiffs Nicole and Bennie Underwood reside in Knoxville, Tennessee. They bring this suit both in their individual capacity and as next friends to their six year old daughter, A. U., who is eligible for, and receiving, special education services under IDEA because she is deaf.

10. Defendant United States Department of Education is an agency of the United States.

11. Defendant Margaret Spellings is Secretary of the Department of Education and is sued in her official capacity.

## JURISDICTION AND VENUE

12. This action arises under IDEA, 20 U.S.C. §§ 1400 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* This Court has jurisdiction under 28 U.S.C. §§ 1331, 2201-02.

13. Venue in this district is proper under 28 U.S.C. § 1391(e)(1) because this is a civil action in which Defendants include an agency of the United States and an officer of an agency of the United States acting in her official capacity, and Defendants reside in this judicial district.

## BACKGROUND

14. In 1975, Congress enacted the Education for All Handicapped Children Act because the "educational needs of millions of children with disabilities" were not being met.

20 U.S.C. § 1400(c)(2). These millions of children were "either totally excluded from schools or sitting idly in regular classrooms awaiting the time when they were old enough to 'drop out.'" H. R. Rep. No. 94–332, at 2 (1975).

15. Although the Education for All Handicapped Children Act was amended numerous times—including being renamed the "Individuals with Disabilities Education Act"—Congress's fundamental goal has not changed. In its most recent amendment, Congress explained that IDEA is necessary "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, 118 Stat. 2647 (2004) (codified at 20 U.S.C. § 1400(d)(1)(A)).

16. In amending the statute in 2004, Congress identified a number of areas in which improvements were needed. According to Congress, "[a]lmost 30 years of research and experience has demonstrated that the education of children with disabilities can be made more effective by . . . supporting the development and use of technology . . . to maximize accessibility for children with disabilities." 20 U.S.C. § 1400(c)(5)(H).

17. This case involves one such technological development. When Congress first addressed the educational needs of disabled children in the 1970s, cochlear implants were still over a decade away from receiving approval from the Food and Drug Administration. But since their approval, cochlear implants have assisted thousands of deaf children whose hearing loss is too severe to benefit from traditional acoustical hearing aids.

## Cochlear Implants and Their Mapping

18. A cochlear implant is significantly more complex than the traditional acoustical hearing aid. Unlike an acoustical hearing aid, which amplifies sound, a cochlear implant

converts sound into electrical stimuli that are delivered directly into the cochlea—bypassing the outer ear completely.

19. A cochlear implant has both external and internal components. The external component consists of a microphone, speech processor, and transmitter system. The microphone sits at or near the ear detecting sounds from the environment. The speech processor, which is either positioned behind the ear or worn on a belt or in a pocket, encodes the sounds and—with the help of the transmitter system—transmits the sound as radio waves to the internal component of the implant.

20. The internal component, which is surgically implanted, includes a receiver connected to an electrode array. Typically, the receiver is implanted just under the skin above and behind the ear, and the electrode array is implanted in the cochlea. The receiver takes the radio waves from the transmitter system and stimulates the selected electrodes so that the brain receives the desired information.

21. For the implant to function properly, it must stimulate the auditory nerve in a manner that allows the brain to process the electrical stimuli. This is achieved by "mapping" the implant to meet the unique needs of the child at the time of each mapping.

22. Mapping is performed by an audiologist with specific training and expertise in cochlear implants. To map the implant, the audiologist, with the child present, connects the child's speech processor—the externally worn component—to a computer that uses special software to measure electrode characteristics and adjust the parameters controlling the stimuli that will be delivered to the electrodes within the implant. The implant's speech processor is programmed according to each electrode's characteristics (*e.g.*, according to the softest sound the patient can detect and the loudest sound that is comfortable). Once the sound processing

parameters for all electrodes have been determined, the computer downloads the information to the implant's speech processor.

23. Proper mapping of the speech processor is essential for a cochlear implant user. If not properly mapped, the cochlear implants will provide H. P. and A. U. with auditory information that does not accurately reflect the sounds around them. Since these children are in an environment in which they must use their listening skills, improper mapping would substantially and adversely affect their ability to learn.

## Statutory Framework

24. IDEA provides federal funding to states that agree to provide "special education and related services" to disabled children according to the terms set out in IDEA. 20 U.S.C. § 1411(a)(1). New Hampshire, Tennessee, and other states have agreed to do so. To remain eligible for this funding, a state must ensure that local education agencies identify students with disabilities who are eligible for special education and related services under IDEA.

25. Once a student is identified as eligible for services under IDEA, the local education agency must create an IEP to ensure that the student's needs are met. § 1412(a)(4). The IEP must, among other things, provide for the special education and "related services" necessary for the child to receive an appropriate education. § 1414(d)(1)(A)(IV).

26. IDEA lists a wide range of "related services" that children with disabilities may need to benefit from special education. The statute, as amended in 2004, provides:

> (A) The term "related services" means transportation, and such developmental, corrective, and other supportive services (including speech-language pathology and *audiology services* . . .) as may be required to assist a child with a disability to benefit from special education . . . .
>
> (B) The term does not include a medical device that is surgically implanted, or the replacement of such device.

7

20 U.S.C.§ 1401(26) (emphasis added).

27. Prior to the 2004 amendment, the definition of "related services" contained only the text currently found in subsection (A). Based on this version of the statute, a federal district court—in a case involving Plaintiffs Beth and David Petit—interpreted "related services" to include cochlear implant mapping. *See Stratham School District v. Beth and David P.*, No. 02-135, 2003 WL 260728 (D.N.H. 2003). Because cochlear implant mapping is a service provided only by licensed audiologists, the court concluded that it was covered as part of the "audiology services" required under IDEA. By reenacting IDEA with "related services" still defined to include "audiology services," Congress ratified this interpretation.

28. Subsection (B) does not exclude the mapping of a surgically implanted device. In considering the 2004 amendments to IDEA, the Senate Committee on Health, Education, Labor, and Pensions proposed a version of subsection (B) which would have excluded cochlear implant mapping from the definition of "related services." Under the committee's proposal, "audiology services" were still included, but "a medical device that is surgically implanted, *or the post-surgical maintenance, programming*, or replacement of such device" was not. S. Rep. No. 108-185, S. Bill 1248, at 107 (2003) (emphasis added). The Senate rejected this proposal. By a vote of 95 to 3, the Senate struck most of the committee's amendment, including the references to "maintenance" and "programming" of surgically implanted devices or a connected device. As a result, the current subsection (B) excludes only "a medical device that is surgically implanted, or the replacement of such device"; it does not exclude the device's programming or maintenance. 20 U.S.C. § 1401(26)(B).

**Regulatory Framework**

29. IDEA delegates limited rulemaking authority to the Secretary of Education. The Secretary may adopt regulations "only to the extent that such regulations are necessary to ensure

8

that there is compliance with the specific requirements of this chapter." § 1406(a). The statute further prohibits the Secretary from adopting any regulation that "violates or contradicts any provision of" IDEA, or that "procedurally or substantively lessens the protections provided to children with disabilities under [IDEA], as embodied in regulations in effect on July 20, 1983 (particularly as such protections related to . . . related services . . .), except to the extent that such regulation reflects the clear and unequivocal intent of Congress in legislation." § 1406(b).

30. In 2005, the Department published a notice of proposed rulemaking to amend the regulations implementing IDEA. 70 Fed. Reg. 35782 (June 21, 2005). The proposed regulations included a provision to exclude cochlear implant mapping from the related services required under the statute, despite Congress's decision not to create such an exception. *Id.* at 35839.

31. On August 14, 2006, the Department issued its final regulations. The final regulations, like the proposed regulations, included a provision excluding cochlear implant mapping from the definition of "related services." Instead of tracking the statutory framework, the regulations specifically provide that mapping is not a covered service:

> (b) Exception; services that apply to children with surgically implanted devices, including cochlear implants.
>
> (1) Related services do not include a medical device that is surgically implanted, the optimization of that device's functioning (e.g., mapping), maintenance of that device, or the replacement of that device.

34 C.F.R. § 300.34.

32. In the comments for this provision, the Department explained that "[t]he exclusion of mapping from the definition of *related services* reflects the language in Senate Report (S. Rpt.) No. 108-185." 71 Fed. Reg. 46569 (Aug. 14, 2006). This Senate Report, however, discussed the exception proposed by the Senate committee, which was overwhelmingly rejected by the Senate.

9

33. The Department also relied on the rejected language from the Senate Report to relieve public agencies of any obligation to ensure that cochlear implants are properly programmed. According to the regulations, "a public agency is not responsible for the postsurgical maintenance, programming, or replacement of the medical device that has been surgically implanted (or of an external component of the surgically implanted medical device)." 34 C.F.R. § 300.113.

34. The comments do not explain why the Department chose to implement a rejected version of the bill and not the final version, which did not exclude coverage of mapping of a surgically implanted device.

### Plaintiffs Do Not Receive Mapping Because of the Department's Regulations

A. **H. P.**

35. H. P. was born in 1996 with sensorineural hearing loss in both ears. On March 3, 1999, he underwent surgery to receive a cochlear implant. In May 1999, Stratham School District in New Hampshire determined that he was eligible for special education services under IDEA.

36. In 2001, the Stratham School District determined that cochlear implant mapping was not a "related service" under IDEA, and thus refused to list it in his IEP. In 2002, a hearing officer, in a "due process hearing," *see* 14 U.S.C. § 1415(f), ruled that the school district's position was incorrect. The school district then challenged the hearing officer's ruling by filing suit in federal district court. The Petits again prevailed, and in 2003 the Stratham School District began including cochlear implant mapping in their son's IEPs.

37. On October 20, 2006, a week after the effective date of the Department's regulations, the Petits received a letter from the co-director of Special Services at their son's

school. The letter informed the Petits of a meeting to review changes to the IEP "occasioned by new regulations going into effect on cochlear implants."

38.     At this meeting, which was held on November 2, 2006, the school district—over the objection of the Petits—removed mapping from the IEP. In the meeting notes, the school justified the change based on the Department's new regulations. According to the school: "The school district has no legal obligation to provide 'mapping' for [H. P.'s] implant. We are proposing to implement the new law."

39.     As a direct result of the Department's regulations, H. P.'s IEP has excluded the audiology service of cochlear implant mapping from the related services provided to him since November 2006.

**B.     A. U.**

40.     A. U. was born in 2001 with bilateral sensorineural hearing loss. She had a cochlear implant surgically implanted in her right ear in May 2002 and in her left ear in March 2005. The Roane County School District in Tennessee identified her as eligible for special education services under IDEA in 2004.

41.     Prior to the 2004 amendments to IDEA, the school district provided mapping services as part of her IEP. The school district removed mapping, however, for the 2005-06 school year based on the Department's proposed rulemaking, despite the fact that the proposed rules had not yet been adopted.

42.     The Underwoods successfully challenged the school district's refusal to provide mapping services at a due process hearing. In this proceeding, the hearing officer interpreted the statute to require the school district to provide mapping services. In so doing, the hearing officer noted that the regulations implementing the 2004 amendments were not in effect during the

11

2005-06 school year, and that the parties agreed that IDEA required mapping before the 2004 amendments were adopted.

43. The school district challenged this ruling in federal district court. Agreeing with the hearing officer, the district court held that the school district should have provided mapping services for the 2005-06 school year, and ordered the school district to pay for these mapping services. *A.U. v. Roane County Bd. of Educ.*, No. 06-123/125, slip op. at 21 (E.D. Tenn. May 23, 2007).

44. The court did not limit its order to the 2005-06 school year. Instead, the court ordered the school district to pay for mapping services to October 13, 2006—the effective date of the Department's new regulations. According to the court, the regulations "changed the playing field," and thus the school district was not responsible for mapping as of their effective date. *Id.* at 21-22. Although the court referred to the effect of the new regulation, its validity had not been briefed by the parties because it was beyond the scope of the lawsuit—which addressed only whether the school district was required to provide mapping services during the 2005-06 school year, and thus before the new regulations took effect.

45. As a result of the Department's regulations, A.U. has not received cochlear implant mapping as part of her IEP since October 13, 2006.

## COUNT I
### (IDEA Claim)

46. Plaintiffs hereby incorporate by reference the allegations set forth in paragraphs 1 through 45 above.

47. Under IDEA, Plaintiffs have a federal cause of action to challenge the removal of cochlear implant mapping from their children's IEPs. 20 U.S.C. § 1415(i)(2).

48.     Plaintiffs are "aggrieved part[ies]" under § 1415(i)(2) because cochlear implant mapping was excluded from their children's IEPs despite the plain language of IDEA, which requires audiology services like mapping to be provided as a "related service[]."

49.     Mapping was excluded from the IEPs as a direct result of the Department's violations of its rulemaking authority.  By excluding cochlear implant mapping from the "related services" provided under IDEA, the Department enacted regulations that were not necessary to ensure compliance with the statute, that violated and contradicted provisions of IDEA, and that substantively lessened the protections provided to children with disabilities.  The Department's actions therefore violated 20 U.S.C. §§ 1406(a), (b)(1)-(2).

## COUNT II
### (APA Claim)

50.     Plaintiffs hereby incorporate by reference the allegations set forth in paragraphs 1 through 45 above.

51.     Under the Administrative Procedure Act, 5 U. S.C. § 701, *et seq.*, a reviewing court has a duty to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2).

52.     The Department's regulations excluding mapping of surgically implanted devices, 34 C.F.R. §§ 300.34(b) & 300.113(b), are unlawful and should be set aside under the APA.  The regulations are contrary to the plain language, intent, and purpose of IDEA.  Moreover, the regulations exceed the Secretary's statutory rulemaking authority under 20 U.S.C. § 1406 and do not reasonably interpret the statute.

53. The Secretary's decision to issue these regulations was arbitrary, capricious, an abuse of discretion, contrary to law, in excess of statutory authority, and otherwise not in accordance with law.

## **RELIEF REQUESTED**

WHEREFORE, for the foregoing reasons, Plaintiffs request that the Court:

1. Enter a declaratory judgment that Defendants' promulgation of 34 C.F.R. §§ 300.34(b) & 300.113(b) was arbitrary, capricious, contrary to law, in excess of statutory authority, and otherwise not in accordance with law.

2. Enter permanent injunctive relief barring Defendants, their officers, employees and agents, from implementing or enforcing any part of 34 C.F.R. §§ 300.34(b) & 300.113(b) found unlawful by the Court.

3. Award Plaintiffs reasonable attorneys' fees as authorized by IDEA. 20 U.S.C. § 1415(i)(3)(B).

4. Order such other and further relief as the Court deems appropriate.

_____
S. William Livingston (D.C. Bar No. 59055)
Emily Johnson Henn (D.C. Bar No. 471077)
Mark W. Mosier (D.C. Bar No. 974887)
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., NW
Washington, DC  20004
Telephone:  (202) 662-6000
Facsimile:  (202) 662-6291

September 6, 2007

*Attorneys for Plaintiffs Beth and David Petit, and Nicole and Bennie Underwood*

JS-44
(Rev.1/05 DC)
Case 1:07-cv-01583-RMU    Document 1-2    Filed 09/06/2007    Page 1 of 2

CIVIL COVER SHEET

C
07-1583
RMU

## I (a) PLAINTIFFS

Beth and David Petit; Nicole and Bennie Underwood

88888

## DEFENDANTS

U.S. Department of Education; Margaret Spellings, in her official capacity

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY) _____
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

S. William Livingston, Emily Johnson Henn, Mark W. Mosier
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., NW
Washington, DC 20004
(202) 662-6000

Case: 1:07-cv-01583
Assigned To : Urbina, Ricardo M.
Assign. Date : 9/6/2007
Description: Admn. Agency Review

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
◉ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### ○ A. *Antitrust*
☐ 410 Antitrust

### ○ B. *Personal Injury/ Malpractice*
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ⊗ C. *Administrative Agency Review*
☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. *General Civil (Other)*    OR    ○ F. *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

④

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Individuals with Disabilities Education Act, 20 U.S.C. 1415; Administrative Procedure Act, 5 U.S.C. 701, challenge to validity of Department's regulations

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ n/a   Check YES only if demanded in complaint  JURY DEMAND: YES ☐  NO ☒

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE September 6, 2007   SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.