## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                              )
BETH and DAVID PETIT, in their                )
individual capacities and as next friends to their )
to their minor son, H.P., and                 )
NICOLE and BENNIE UNDERWOOD,                   )
in their individual capacities and as         )
next friends to their minor daughter,         )
A.U.                                          )
                          Plaintiffs,         )
                                              )
              v.                              )          Civ. No. 1:07CV01583 (RMU)
                                              )
UNITED STATES DEPARTMENT                       )
OF EDUCATION, and                             )
MARGARET SPELLINGS, in her official           )
capacity as Secretary of the                  )
United States Department of Education         )
                                              )
                          Defendants.         )
_____)


### REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR ALTERNATIVELY, FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiffs' Opposition and Cross-Motion for Summary Judgment fails to explain why this Court should not dismiss Plaintiffs' Individuals with Disabilities Education Act ("IDEA") claim and grant summary judgment for the United States Department of Education and Margaret Spellings, in her official capacity as the Secretary of the United States Department of Education (collectively "ED" or "the Secretary"), on Plaintiffs' Administrative Procedure Act ("APA") claim.   Plaintiffs' efforts to convince this Court that they have a cause of action directly under the IDEA fall short because the statute contains no provision expressly waiving the federal government's sovereign immunity and granting Plaintiffs a private right of action against ED.

The absence of any express provision in the IDEA allowing Plaintiffs to pursue their claim against ED is fatal to their claim and warrants its dismissal.

Plaintiffs' APA claim fares no better because they suggest there is clarity in the IDEA where none exists. As the statutory provision at issue here is ambiguous, under the deferential standard applicable to agency action, this Court must uphold the Secretary's decision to exclude cochlear implant mapping as a "related service."

Plaintiffs' interpretation of the statutory provision at issue here is but one interpretation of an ambiguous statutory provision. Defs.' Mem. at 27-28. Given the existence of multiple interpretations, the Secretary's interpretation "is at least as plausible as [those] competing ones, [and] there is little, if any, reason not to defer to [her] construction." Good Samaritan Hosp. v. Shalala, 508 U.S. 402, 417 (1993). Moreover, the Secretary's well-reasoned rationale for excluding mapping services from the IDEA's definition of "related services" is set forth in detail in the Administrative Record. Given this Court's "narrowly defined duty to hold agencies to certain minimal standards of rationality," National Oilseed Processors Ass'n v. Browner, 924 F. Supp. 1193, 1206 (D.D.C. 1996), the Secretary's regulations should be upheld.

## ARGUMENT

In urging this Court to deny ED's Motion and grant their Motion, Plaintiffs ignore the highly deferential standard of review this Court must apply when reviewing administrative agency action, such as the Secretary's decision to exclude mapping services as a "related service" under the IDEA. Where, as here, the Secretary's "reasons and policy choices . . . conform to certain minimal standards of rationality, [her decision] . . . is reasonable and must be upheld." Id. at 1201 (internal quotations omitted). Indeed, considerable weight must be given to

the Secretary's construction of the IDEA, the administration of which Congress has entrusted to her.  See Honig v. Doe, 484 U.S. 305, 325 n.8 (1988) (deferring to ED's interpretation of statute it is charged with monitoring and enforcing).  Even if this Court agrees that Plaintiffs' interpretation of the statute is preferable to the Secretary's, this Court must uphold the Secretary's regulations because her interpretation of the IDEA is at least plausible.  See Good Samaritan Hosp., 508 U.S. at 417.

> I.    ED's Regulations Excluding Mapping Services From the Definition of "Related Services" Are A Permissible Construction of the IDEA and Supreme Court Precedent Interpreting the Statute

The parties agree that resolution of Plaintiffs' APA claim requires this Court to employ the two-part test set forth in Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984).  Under Chevron, the Court first "must look to whether Congress has directly spoken to the precise question at issue."  Baker Norton Pharm. v. U.S. Food & Drug Admin., 132 F. Supp. 2d 30, 33 (D.D.C. 2001) (internal quotations omitted).  If Congress has not directly spoken to the issue, the Court then determines whether the Secretary's interpretation of the IDEA is based on a permissible construction of the statute.  See id. at 33-34.   In their Opposition and Cross-Motion for Summary Judgment, Plaintiffs contend that resolution of their APA claim ends at Chevron step one because "Congress spoke clearly to the issue of whether mapping is a related service by defining 'related services' to include 'audiology services,' which unambiguously includes cochlear implant mapping."  Pls.' Mem. at 15.  Plaintiffs somehow find clarity where hundreds of commenters, see A.R. ED-003538-003735, and one district court, see A.U. v. Roane Cty. Bd. of Educ., 501 F. Supp. 2d 1134 (E.D. Tenn. 2007), did not.  Plaintiffs' position is not surprising given their unwillingness to construe the term "audiology services" in

the context of the IDEA's entire statutory scheme. As demonstrated in ED's opening brief,

Defs.' Mem. at 20-25, and below, the statutory language at issue is ambiguous regarding whether

Congress intended to require states to expend funds to provide mapping services for a medical

device that Congress expressly exempted from the IDEA.

A.    **The Reference to "Audiology Services" In The "Related Services" Definition Is Ambiguous When Viewed In The IDEA's Statutory Context**

Plaintiffs would have this Court hold that the meaning of the term "audiology services,"

as referenced in the IDEA's definition of "related services," unambiguously includes cochlear

implant mapping services, based on dictionary definitions of the term "audiology" that broadly

define the term to include "'the evaluation of hearing defects and the rehabilitation of those who

have such defects.'" Pls.' Mem. at 15-16. ED does not dispute that the term "audiology," read

in isolation, could be understood to include mapping services for individuals with cochlear

implants. However, the dictionary definition of the term "audiology," divorced from any

explanation as to how that definition fits into the structure, context, or history of the IDEA

Amendments, provides no basis for the Court to conclude that the language of the Act compels

such a result.[1]

_____

[1]Plaintiffs contend that the decision in Stratham Sch. Dist. v. Beth P., No. 02-135, 2003 WL 260728 (D.N.H. Feb. 5, 2003) supports their argument that the IDEA's reference to "audiology services" should be interpreted to include cochlear implant mapping. However, the Stratham court's conclusion that the IDEA's reference to "audiology services" includes the provision of mapping services should be given no weight because it interpreted a version of the IDEA in effect prior to the enactment of the 2004 Amendments, which did not contain the medical devices exception at issue here. See Defs.' Mem. at 28-29. In any event, although Congress may have been aware of the Stratham decision, the legislative record does not support Plaintiffs' argument that Congress "adopted the court's construction" of the IDEA. Rather, Congress's decision to amend the "related services" definition by specifically excluding surgically implanted medical devices and their removal demonstrates that Congress intended to

Indeed, the D.C. Circuit has expressly rejected the narrow form of statutory construction that Plaintiffs attempt to employ here.  See County of Los Angeles v. Shalala, 192 F.3d 1005, 1014 (D.C. Cir. 1999) ("'[W]e must not be guided by a single sentence or member of a sentence but look to the provisions of the whole law.'") (internal citation omitted).  Instead, "words of a statute must be read in their context and with a view to their place in the overall statutory scheme." Davis v. Michigan Dep't of Treasury, 489 U.S. 803, 809 (1989); County of Los Angeles, 192 F.3d at 1014 (explaining that courts must "'consider not only the language of the particular statutory provision under scrutiny, but also the structure and context of the statutory scheme of which it is a part'") (internal citation omitted).  This principle of statutory construction is equally applicable when statutory language is given its "ordinary, common" meaning.  See Conroy v. Aniskoff, 507 U.S. 511, 515 (1993) ("[T]he meaning of statutory language, plain or not, depends on context.") (internal quotation and citation omitted).

In this case, by examining the reference to "audiology services" in its statutory context, any putative clarity that the term arguably might otherwise have quickly devolves into ambiguity.  See County of Los Angeles, 192 F.3d at 1014-15.  The reference to "audiology services" is contained in the IDEA's definition of "related services."  The IDEA defines "related services" as:

> [T]ransportation, and such developmental, corrective, and other supportive services (including speech-language pathology and audiology services . . . and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as

---

change the law, not maintain the status quo.  See Mudge v. United States, 308 F.3d 1220, 1232 (D.C. Cir. 2002) (noting the presumption that "Congress intend[s] to change the law by amending it"); Cf. Public Citizen v. F.A.A., 988 F.2d 186, 194 (D.C. Cir. 1993) ("Congress is presumed to be aware of a[] . . . judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.") (internal quotation and citation omitted).

> may be required to assist a child with a disability to benefit from special education, and
> includes the early identification and assessment of disabling conditions in children.

20 U.S.C. § 1401(26)(A).  Subsection (26)(B) of the definition makes clear that "[t]he term

[related services] does not include a medical device that is surgically implanted, or the

replacement of such device."  20 U.S.C. § 1401(26)(B) [hereinafter "the medical devices

exception"].

It is unclear from this statutory context what Congress intended regarding the scope of

the "related services" definition (and its effect on the reference to "audiology services" therein)

given the enactment of the medical devices exception.  Plaintiffs' argument that, by enacting the

medical devices exception, Congress intended to exempt only the provision and replacement of

surgically implanted medical devices, see Pls.' Mem. at 19-20, would render superfluous the

medical services exception contained in the definition of "related services."   Under the IDEA's

medical services exception, states are not required to provide medical services beyond those

necessary for diagnostic and evaluative purposes.  See 20 U.S.C. § 1401(26)(A) ("The term

'related services' means . . . medical services, except that such medical services shall be for

diagnostic and evaluation purposes only. . . .").  This broad exception necessarily exempts from

the IDEA's coverage the provision of surgical services, including surgical services necessary to

implant and remove medical devices.  Because courts are instructed to interpret statutes "so that

no word, clause, sentence, or phrase is rendered . . . superfluous," Air Line Ass'n Intern. v.

Pension Benefit Guar. Corp., 193 F. Supp. 2d 209, 218 n.4 (D.D.C. 2002), Plaintiffs' narrow

construction of the medical devices exception cannot withstand scrutiny.[2]

---

[2]Plaintiffs' attempt to bolster their construction of the IDEA by pointing to the Supreme
Court's decision in Irving Indep. Sch. Dist. v. Tatro, 468 U.S. 883 (1984), is equally unavailing.

Plaintiffs next contend that "the medical devices exception modifies the definition of 'related services,' and not the meaning of 'audiology services,'" and thus the term "audiology services" should be given its ordinary meaning, which includes cochlear implant mapping.  Pls.' Mem. at 19.  However, this interpretation of the IDEA cannot withstand scrutiny because the Act defines the term "related services" to mean, *inter alia*, "audiology services."[3]  Specifically, Section 1401(26) provides in pertinent part:

(A) In general

---

Plaintiffs argue that, because the Supreme Court "interpreted 'medical services' to refer 'to services that must be performed by a physician,'" it "logic[ally]" follows that "cochlear implant mapping is an audiology service because it is a service provided only by licensed audiologists." Pls.' Mem. at 16.  However, the IDEA does not require states to fund all of the services provided by a physician but only those services necessary for diagnostic and evaluative purposes. Accordingly, it is not unreasonable to conclude, as the Secretary did here, that Congress, when it enacted the medical devices exception, similarly sought to limit the "related services" provided by audiologists.  See Cedar Rapids Cmty. Sch. Dist. v. Garret F., 526 U.S. 66, 74 n.6 (1999) (observing that the "Secretary has authority under the IDEA to adopt regulations that define the 'medical services' exclusion [to the related services definition] by more explicitly taking into account the nature and extent of the requested services[]").  In addition, the plain language of the IDEA and case law interpreting the statute do not support Plaintiffs' argument that one of the objectives of the IDEA is to provide "audiology services."  Pls.' Mem. at 39.  Contrary to Plaintiffs' assertions otherwise, Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education ("FAPE") that emphasizes special education and related services designed to meet their unique needs."  20 U.S.C. § 1401(d)(1)(A).  Courts interpreting this provision have held that the IDEA requires only a "'basic floor of opportunity'" and there is "'no additional requirement that the services so provided be sufficient to maximize each child's potential commensurate with the opportunity provided other children.'" A.I. ex. rel. Iapalucci v. District of Columbia, 402 F. Supp. 2d 152, 167 (D.D.C. 2005) (quoting Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley, 458 U.S. 176, 198, 201 (1982)).  Accordingly, the IDEA does not require states to provide every conceivable "audiology service" but only those necessary to ensure that the child receives a FAPE.

[3]Plaintiffs' interpretation is also inconsistent with its own argument which recognizes that the term "related services" is defined to include "audiology services."  See Pls.' Mem. at 15. ("[B]y defining 'related services' to include 'audiology services'. . . .").

The term 'related services' means transportation, and such developmental, corrective,

and

other supportive services (including speech-language pathology and <u>audiology services,</u> interpreting services, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, . . .) as may be required to assist a child with a disability to benefit from special education and includes the early identification and assessment of disabling conditions in children.

(B) Exception

The term does not include a medical device that is surgically implanted, or the replacement of such device.

20 U.S.C. §§ 1401(26)(A) & (B) (emphasis added). Thus, the medical devices exception does not merely modify the term "related services," as Plaintiffs suggest, but the entire "related services" definition, including the meaning of "audiology services" therein. When viewed in this context, the scope of the "related services" definition (including the reference to "audiology services" therein), in light of the enactment of the medical devices exception, is ambiguous.[4]

Plaintiffs also argue that the medical devices exception "cannot be interpreted to exclude both the device itself and services related to that device" because "Congress understood the distinction between a device and services related to a device" as demonstrated by the IDEA's reference to "assistive technology devices" and "assistive technology services." Pls.' Mem. at 20. These references, however, only serve to bolster ED's contention that the scope of the "related services" definition, in light of the enactment of the medical devices exception, is

---

[4]Plaintiffs mischaracterize ED's argument on this point. Contrary to Plaintiffs' assertions, ED does not contend that the medical devices exception should be interpreted to include services. Rather, ED contends that the scope of the "related services" definition (including the reference to "audiology services" therein) is ambiguous given the medical devices exception to that definition. <u>See</u> Defs.' Mem. at 23. The issue is whether Congress's intent to provide cochlear implant mapping as a "related service" is clear from the face of the statute. As shown in ED's opening brief and herein, the answer to that question is "no."

ambiguous when considered in the context of the IDEA's entire statutory structure.

As Plaintiffs correctly observe, the IDEA defines an "assistive technology device" as an "item, piece of equipment, or product system . . . that is used to increase, maintain, or improve functional capabilities of a child with a disability." 20 U.S.C. § 1401(1)(A) *cited in* Pls.' Mem. at 20. In turn, the IDEA broadly defines "assistive technology services" as "any service that directly assists a child with a disability in the selection, acquisition, or use of an assistive technology device," including "selecting, designing, fitting, customizing, adapting, applying, maintaining, repairing, or replacing assistive technology devices."[5] 20 U.S.C. §§ 1401(2) & 1401(2)(C) *cited in* Pls.' Mem. at 20.

Congress, as Plaintiffs' correctly observed, clearly recognized the distinction between a device and a service when it enacted the "assistive technology <u>device</u>" and "assistive technology <u>service</u>" definitions. However, Congress did not make any such distinction when it amended the definition of "related services" to exclude surgically implanted medical devices. Instead, Congress used language referring to "devices" in an exception to the IDEA's provision defining the scope of "related services." Congress's decision to include the medical devices language in its definition of "related services" renders the scope of that definition ambiguous as applied to

---

[5] When Congress amended the IDEA in 2004, however, in addition to amending the definition of "related services" to add the medical devices exception, it amended the definition of "assistive technology devices" to exclude a "medical device that is surgically implanted, or the replacement of such device." <u>See</u> 20 U.S.C. § 1401(1)(B) ("The term [assistive technology device] does not include a medical device that is surgically implanted, or the replacement of such device."). It is undisputed that the medical devices exception to the definition of "assistive technology device" exempts cochlear implants from the IDEA's coverage under that definition. Similarly, because the term "assistive technology service" is defined as services related to "assistive technology devices," which patently does not include implanted medical devices, it follows that mapping is not an "assistive technology service."

the provision of "related services" for surgically implanted medical devices.  Alternatively, employing Plaintiffs' interpretation of the "related services" definition would render the addition of the medical devices exclusion to the "related services" definition surplussage, because, following Plaintiffs' argument, "devices" are not a part of the "related services" definition and surgically implanted medical devices are separately excluded from the definition of "assistive technology device."  See Air Line Ass'n Intern., 193 F. Supp. 2d at 218 n.4 ( instructing courts to interpret statutes "so that no word, clause, sentence, or phrase is rendered . . . superfluous").

The foregoing demonstrates that Congress's intent to provide mapping services as a "related service" for a device it expressly excluded from the IDEA's coverage cannot be discerned from the statute's language and its structure.[6]  Indeed, it is difficult to reach any other conclusion given the Administrative Record in this case, which contains an overwhelming number of comments from parents, teachers, local and state educational agencies, public interest groups, and other organizations, requesting that the Secretary clarify the scope of the "related services" definition given the enactment of the medical devices exception to that definition.

_____

[6]ED does not claim, as Plaintiffs suggest in their brief, that the medical devices exception is sufficiently ambiguous to exclude both the device itself and all services related to the device, nor does ED argue that Congress intended an implied exception for services related to medical devices.  Pls.' Mem. at 20.  Rather, as explained in ED's opening brief, Defs.' Mem. at 22-25, and herein, ED contends that Congress's intent regarding the scope of the "related services" definition, as applied to the provision of mapping services and other "related services" for surgically implanted medical devices, is unclear given Congress's decision to amend the IDEA to exclude from its coverage the provision or replacement of surgically implanted medical devices. Thus, Plaintiffs' reliance on the statutory canon *expressio unius exclusio alterius* to refute this purported argument is unpersuasive both because ED has not raised such an argument and because it is of only limited utility in judicial review of challenges to regulatory action.  See Texas Rural Legal Aid, Inc. v. Legal Servs. Corp., 940 F.2d 685, 694 (D.C. Cir. 1991) (explaining that the *expressio unius* canon "has little force in the administrative setting" because it "is simply too thin a reed to support the conclusion that Congress has clearly resolved th[e] issue" for purposes of reviewing the validity of agency action under Chevron step one).

Moreover, a district court's observation that the statutory language at issue is unclear lends support to ED's contention that Congress's intent to provide mapping services as a "related service" is ambiguous.[7]  See A.U. v. Roane Cty. Bd. of Educ., 501 F. Supp. 2d 1134, 1144 (E.D. Tenn. 2007) (observing that the medical devices exception to the definition of "related services" "is anything but clear" regarding whether Congress intended to provide mapping services as a "related service" for a medical device that is itself excluded from the IDEA).

**B.**     **The IDEA's Legislative History Sheds No Light On Congress's Intent To Provide Cochlear Mapping As A "Related Service"**

Plaintiffs also claim that "the legislative history confirms that Congress intended for cochlear implant mapping to be covered under the statute."  Pls.' Mem. at 22.  However, a review of the "evidence" upon which Plaintiffs rely to buttress this contention demonstrates the weakness of their argument.  Plaintiffs first make much of the fact that Congress ultimately enacted a version of the bill that does not contain the "or the post-surgical maintenance, programming" language that was part of an earlier version of the "related services" definition. See Pls.' Mem. at 8-9, 22.  However, as ED explained in its opening brief, Defs.' Mem. at 27, the deletion of this language, without any explanation in the legislative record as to why the language was deleted, or the effect of this deletion on the substantive provisions of the "related services" definition and the medical devices exception, is insufficient to demonstrate

_____

[7]As ED acknowledges in its opening brief, Defs.' Mem. at 24 & n.5, the A.U. court did not consider the validity of ED's regulations.  Nevertheless, the court's observations regarding the ambiguity inherent in the IDEA's statutory language are instructive on the issues before this Court.  Moreover, Plaintiffs' heavy reliance on Stratham, decided before the 2004 IDEA Amendments at issue in this case, is difficult to reconcile with their assertion that this Court should not rely on A.U., a case decided after the 2004 Amendments.  As A.U. at least considered the statutory scheme at issue here, it is of much greater persuasive value than Stratham.

11

congressional intent.[8]  See Edison Elec. Inst. v. U.S. Envtl. Prot. Agency, 2 F.3d 438, 451 (D.C.

Cir. 1993) (""[T]he deletion of a word or phrase in the throes of the legislative process does not

ordinarily constitute, without more, evidence of a specific legislative intent.").

Realizing the inadequacy of the legislative record on this point, Plaintiffs next attempt to

provide this Court with evidence of Congress's intent by relying on a letter written by Senator

Judd Gregg to the Secretary, after the enactment of the 2004 IDEA Amendments, in which

---

[8]In an effort to convince this Court otherwise, Plaintiffs erroneously rely on a number of statutory interpretation principles to buttress their argument that the legislative history clearly reflects Congress's intent to provide mapping services as a "related service."  For example, Plaintiffs first argue that the deleted language is probative of Congress's intent to provide mapping services as a "related service" because "Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language." Pls.' Mem. at 22 *citing* I.N.S. v. Cardoza-Fonseca, 480 U.S. 421, 442-43 (1987).  However, this principle of statutory construction is generally inapplicable where, as here, Congress has not replaced the deleted language with an alternative word or phrase.  Cf. Cardoza-Fonseca, 480 U.S. at 441-42 (applying the principle where Congress rejected the Senate version of a bill which had established a stricter standard for asylum eligibility than the standard ultimately enacted in the House version of the bill).  Plaintiffs next argue that the Court should find that the legislative history clearly expresses Congress's intent to include mapping as a "related service" because "[w]here Congress includes limiting language in an earlier version of a bill but deletes it prior to enactment, it may be presumed that the limitation was not intended." Russello v. United States, 464 U.S. 16, 23-24 (1983) *cited in* Pls.' Mem. at 22-23.  This statutory principle, like the *sub silentio* rule on which Plaintiffs rely, typically applies only in cases in which Congress has replaced the deleted language with alternative words or phrases.  See, e.g., United States ex rel. Stinson, Lyons, Gerlin, & Bustamante, P.A. v. Prudential Ins. Co., 944 F.2d 1149, 1156 (3d Cir. 1991) (applying the principle where Congress had deleted the term "proceeding" and replaced it with "hearing").  In any event, equally applicable and directly contrary to this statutory interpretation principle is the well-settled rule that deleting a word or phrase in the legislative process does not adequately demonstrate clear congressional intent.  See Edison Elec. Inst., 2 F.3d at 451 *cited in* Defs.' Mem. at 27.  Finally, Plaintiffs misapply the principle that, when Congress creates an express statutory exception, "'additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.'" TRW, Inc. v. Andrews, 534 U.S. 19, 28 (2001), *cited in* Pls.' Mem. at 23.  This principle only applies when Congress "explicitly enumerates certain exceptions to a general prohibition." TRW, 534 U.S. at 28  ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.") (emphasis added).  Here, the "related services" definition is not a "general prohibition" but rather a statutory definition.  Thus, Plaintiffs' reliance on this principle cannot save their argument.

Senator Gregg purports to "explain" the effect of the deleted "or the post-surgical maintenance, programming" language on the substantive provisions of the "related services" definition. <u>See</u> Pls.' Mem. at 3, 24 *citing* A.R. ED-000786-000787. However, Senator Gregg's post-enactment statements "have no probative weight and represent only the personal views of the legislator." <u>Petry v. Block</u>, 697 F.2d 1169, 1171 (D.C. Cir. 1983) (reversing the district court's decision because the trial court "relied improperly on the post-enactment statements of legislators involved in the enactment process"). Indeed, the D.C. Circuit has expressly instructed trial courts and agencies to refuse to consider such statements because "members of Congress have no power, once a statute has been passed, to alter its interpretation by post-hoc 'explanations' of what it means." <u>Hazardous Waste Treatment Council v. U.S. Envtl. Prot. Agency</u>, 886 F.2d 355, 365 (D.C. Cir. 1989).

Without Senator Gregg's post-enactment explanations to "clarify" Congress's intent regarding the provision of cochlear implant mapping as a "related service," Plaintiffs are left with a sparse legislative history that is susceptible to multiple interpretations, the existence of which provides further evidence that the legislative record in this case is, in fact, ambiguous. <u>See</u> Defs.' Mem. at 27-28. None of the arguments raised in Plaintiff's Opposition and Cross-Motion for Summary Judgment on this point undermines ED's contention that Congress's failure to provide <u>any</u> explanation regarding why it deleted the "or the post-surgical maintenance, programming" language from the final version of the bill renders the legislative history ambiguous.[9] <u>See</u> <u>OSG Bulk Ships, Inc. v. U.S.</u>, 921 F. Supp. 812, 821 n.10 (D.D.C. 1996)

---

[9]For example, Plaintiffs argue that "there is no basis for thinking that Congress created a gap to be filled by the Secretary when it deleted the 'post-surgical maintenance, [and] programming'" language from the final version of the bill. Pls.' Mem. at 24. However, it is well-settled that "[w]here, as here, Congress enacts an ambiguous provision within a statute

13

(finding that Congress's failure to explain why it deleted a proposed amendment from the final version of a bill rendered the legislative record ambiguous).

### C. The Secretary's Regulations Are Entitled to Deference Because They Are A Permissible Construction of the IDEA And Are Neither Arbitrary, Nor Capricious.

Because neither the IDEA's text, structure, nor legislative history illuminates Congress's unambiguous intent to provide cochlear implant mapping as a "related service," the Secretary's interpretation of the IDEA is entitled to deference and must be sustained if it is "logically consistent with the language of the [statute] and [] serves a permissible regulatory function." Rollins Envtl. Servs. v. U.S. Envtl. Prot. Agency, 937 F.2d 649, 652 (D.C. Cir. 1991). Although Plaintiffs proffer an alternative construction of the IDEA Amendments, a court must not "choose from plausible readings the interpretation [] [it] think[s] best." American Fed. Gov't Employees v. FLRA, 778 F.2d 850, 856 (D.C. Cir. 1985). Indeed, even if Plaintiffs "advance[] a more plausible reading of the [statute] than that offered by the agency, it is 'the agency's choice [that] receives substantial deference.'" General Elec. Co. v. U.S. Envtl. Prot. Agency, 53 F.3d 1324, 1327 (D.C. Cir. 1995) (internal citation omitted). In other words, given the highly deferential standard applicable to the Secretary's interpretation of the IDEA, Plaintiffs face "an uphill battle," id., to prevail on their APA claim.

Plaintiffs' attempt to overcome this substantial burden by arguing that the Secretary's "interpretation does not further the objectives of the IDEA" and that the rationales underlying the Secretary's interpretation are not supported by the Administrative Record in this case. Pls.' Mem. at 26-30. The final rule and the Administrative Record belie Plaintiffs' assertions on this

---

entrusted to the agency's expertise, it has 'implicitly delegated to the agency the power to fill those gaps.'" City of Los Angeles, 192 F.3d at 1016 (emphasis added).

point.

For example, Plaintiffs claim that "defendants fail to provide a reasonable explanation of how IDEA's objectives are served by interpreting 'related services' to exclude mapping based on cost." Pls. Mem. at 27. However, the Secretary clearly explained that it considers "transportation and co-payment costs" associated with cochlear implant mapping,[10] "incidental to a particular course of treatment chosen by the child's parents to maximize the child's functioning, and are not necessary to ensure that the child is provided access to education. . . ." 71 Fed. Reg. 46,540, 46,570 (Aug. 14, 2006) (emphasis added). The Supreme Court has expressly held that the IDEA does not "require public schools to maximize the potential of disabled students" and observed that "the potential financial burdens imposed on participating States may be relevant to arriving at a sensible construction of the IDEA." Garret F., 526 U.S. at 77-78 (citing Board of Ed. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley, 458 U.S. 176, 200 (1982)). Thus, the Secretary's interpretation is consistent with both the IDEA and Supreme Court precedent interpreting the statute.[11] Moreover, Plaintiffs' claim that there is no evidence in the Administrative Record to establish the cost of mapping is belied by a careful

_____

[10]ED does not rely, as Plaintiffs suggest, on the website it cited in the "Background" section of its brief, Defs.' Mem. at 11, to establish the cost of mapping services. Rather, ED offered the information in this section of its brief to provide the Court with additional context with which to understand the nature of these services.

[11]Plaintiffs argue that the Secretary's interpretation is impermissible because she based her definition on cost itself, rather than on the cost concerns that Congress may have had. See Pls.' Mem. at 28. That is patently false. The promulgation of the regulations at issue here are no different than those at issue in Tatro and Garret F. As in those cases, the Secretary here too was confronted with ambiguous statutory provisions and sparse legislative history. Given this ambiguity and relying on Supreme Court precedent interpreting the IDEA, the Secretary reasonably determined that Congress, when it enacted the 2004 IDEA Amendments, sought to spare states "from an obligation to provide a service that might well prove unduly expensive. . . ." Tatro, 468 U.S. at 892.

review of the comments the Secretary received in connection with this rulemaking.[12]  See, e.g.,
A.R. ED-001022 (referencing estimated costs for a school district to obtain the equipment and
software necessary to provide mapping services); A.R. ED-000388-000389 (same).

     Next, Plaintiffs argue that "interpreting 'related services' based on whether a service
must be provided at school or during the school day is impermissible because it is inconsistent
with the requirement to provide 'special education' outside of school."  Pls.' Mem. at 28-29.
Plaintiffs are plainly wrong on that point.  The Supreme Court has expressly held that the IDEA
does not require states to provide services under the statute if those services "may appropriately
be administered to a [disabled] child other than during the school day. . . ."  Tatro, 468 U.S. at
894 (emphasis added).  Based on the Supreme Court's interpretation of the IDEA in Tatro and
Garret F.,[13] the Secretary reasonably determined that, because "mapping does not have to be
done in school or during the school day in order to be effective," 71 Fed. Reg. at 46,569, it is not
a service necessary to provide the disabled student with "'meaningful access to education that
Congress envisioned.'"  Garret F., 526 U.S. at 73 (internal citation omitted).

     Plaintiffs' also grossly mischaracterize what they describe as the Secretary's third

---

    [12]Contrary to Plaintiffs' assertions, the Secretary's decision to exclude mapping as a
"related service" is well-supported by the Administrative Record.  Even if this Court were to
conclude otherwise – which it should not, the proper course is to remand to the Secretary for
additional explanation.  See County of Los Angeles, 192 F.3d at 1023 ("[W]here 'the record
before the agency does not support the agency action, the proper course, except in rare
circumstances, is to remand to the agency for additional investigation or explanation.'") (quoting
Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985)).

    [13]Although the Tatro and Garret F. decisions involved the Supreme Court's interpretation
of the IDEA's medical services exception to the "related services" definition, it is not
unreasonable to conclude, based on both of these decisions, that the Secretary also has the
authority to interpret the scope of the medical devices exception to the same definition.  See
Garret F., 526 U.S. at 75 n.6 (observing that "the Secretary surely has the authority to enumerate
the services that are, and are not, fairly included within the scope of [the 'related services'
definition]").

rationale for excluding mapping as a "related service" - - "that mapping is not necessary to protect a child's health or safety." Pls.' Mem. at 29. The Secretary did not state, as Plaintiffs suggest that, "mapping is not necessary to protect a child's health or safety." Rather, the Secretary delineated a rule that draws a line between those "services that are not necessary to provide access to education by maintaining the health or safety of the child <u>while in school</u>" that the IDEA covers, such as verifying that a cochlear implant is functioning properly, and those that the Act excludes, such as mapping. 71 Fed. Reg. at 46,571, 46,581, 46,764 *cited in* Defs.' Mem. at 32 (emphasis added). As discussed above, the Supreme Court has unequivocally drawn a line between "services that enable a disabled child to remain in school during the day," <u>id.</u>, and those that "may appropriately be administered to a [disabled] child other than during the school day." <u>Tatro</u>, 468 U.S. at 894. Because "mapping does not have to be done in school or during the school day," and "the level of expertise required" to perform mapping is beyond that which school personnel typically have, the Secretary decided to exclude mapping from the IDEA's coverage. 71 Fed. Reg. at 46,571. The Secretary's decision to exclude mapping from the IDEA's coverage but require public agencies to routinely check the external components of a surgically implanted medical device reasonably balances the need to provide services and support to a child with a cochlear implant while in school while "spar[ing] schools from an obligation to provide a service that may well prove unduly expensive and beyond the range of their competence." <u>Tatro</u>, 468 U.S. at 892.

Finally, Plaintiffs' contention that the "IDEA's objectives are not furthered by interpreting 'related services' based on the level of expertise needed for a particular service because many of the [IDEA's related] services . . . require a high level of expertise," Pls.' Mem. at 29-30, is without merit given the Supreme Court's precedent on this point. The Supreme

Court has unequivocally "endorsed" the Secretary's consideration of the competence of school staff to provide services under the "related services" definition as a basis for promulgating a regulation under the IDEA.  See Garret F., 526 U.S. at 74 ("We referenced the likely cost of the services and the competence of school staff as justifications for drawing a line between physician and other services but our endorsement of that line was unmistakable.").  As ED explained in its final rule and its opening brief (and as Plaintiffs acknowledge in their brief, Pls.' Mem. at 5), cochlear implant mapping requires intensive training, and a level of expertise and equipment beyond that which school personnel, such as school audiologists, typically have.[14]  See 71 Fed. Reg. at 46,570, 46,571; see also Defs.' Mem. at 9, 32.

At the end of the day, although Plaintiffs may purport to raise any number of reasons why their interpretation of the IDEA is the preferred interpretation, none of these reasons is sufficient to overturn the Secretary's interpretation here because it is "at least as plausible" as the one offered by Plaintiffs.  Good Samaritan Hosp., 508 U.S. at 417; see also Rollins, 937 F.2d at 652. And the reasons courts give deference to agency interpretations are directly applicable here: "[t]hrough this policy of deference, agencies, not courts, retain control over which permissible reading of the [statute] they will enforce." General Elec. Co., 53 F.3d at 1327.  Here, the Secretary's regulations are not only "a plausible interpretation of the IDEA" but consistent with Supreme Court precedent interpreting the statute.  Under these circumstances, her interpretation is entitled to deference and should be upheld.

---

[14]Indeed, not all audiologists have the requisite training and expertise to perform cochlear implant mapping.  See Defs.' Mem. at 9 citing A.R. ED 000388.  To that point, audiologists who provide cochlear implant mapping services must undergo intensive training, including "450 hours of direct contact with individuals with cochlear implants, [and] [] 50 hours of case management of individuals with cochlear implants."  Defs.' Mem. at 9.

**D.    The Secretary Has Not Exceeded Her Statutory Authority By Enacting the Mapping Regulations**

As the foregoing demonstrates, the Secretary has not, as Plaintiffs allege, violated the IDEA by enacting regulations that violate or contradict the Act, 20 U.S.C. § 1406(a), or by implementing regulations that substantively lessen the protections afforded to children with disabilities . . . as embodied in regulations in effect on July 20, 1983.  See 20 U.S.C. § 1406(b)(2) *cited in* Pls.' Mem. at 39.  The Secretary did not violate or contradict the IDEA because her interpretation of the statute is consistent with the statute's plain language and the Supreme Court's decisions in Tatro and Garret F. interpreting the IDEA.

Nor has the Secretary violated the IDEA by enacting regulations that, in Plaintiffs' view, substantively lessen the protections afforded to children with disabilities under the 1983 regulations.  As explained in its opening brief, Defs.' Mem. at 18 n.3, the regulations in effect in 1983 did not, nor could they contemplate the provision of cochlear implant mapping as a "related service" because the Food & Drug Administration did not approve the use of cochlear implants for children until 1990.  The cases that Plaintiffs' cite for their contention that "[r]egulations, like statutes, are prospective in nature," Pls.' Mem. at 40 n.17, provide no support for their argument where, as here, Congress has expressed its unambiguous intent to provide a specific context -- in this case a time benchmark, *i.e.*, the July 20, 1983 date -- in which to review the validity of the Secretary's regulations.

**II.    Plaintiffs Do Not Have A Cause of Action Under The IDEA**

Contrary to Plaintiffs' assertions, Pls.' Mem. at 31, ED does not claim that the only question before this Court is "whether the IDEA's right of action permits suits only against the

state or local agency."[15]  Rather, this Court must determine only whether a private right of action

against the federal government exists under the IDEA, and more importantly, whether Congress

enacted any provision in the IDEA that expressly waives the federal government's sovereign

immunity.  See National Trust for Historic Preservation v. Blanck, 938 F. Supp. 908, 914

(D.D.C. 1996) *cited in* Defs.' Mem. at 13.  The answer to those questions are patently "no."  The

IDEA does not contain any express provision under which Plaintiffs may maintain this suit

challenging an alleged unlawful regulatory action.  The absence of any such provision is fatal to

Plaintiffs' IDEA claim. See, e.g., Worthington Compressors, Inc. v. Costle, 662 F.2d 45, 50

(D.C. Cir. 1981) (upholding district court's determination that plaintiff did not have a cause of

action against the EPA under the Noise Control Act because the statute did not contain any

express or implied right of action); Taydus v. Cisneros, 902 F. Supp. 278, 282 (D. Mass. 1995)

(dismissing plaintiff's claims under the Veterans Readjustment Act and the Veterans Preference

Act because neither statute contains an express private right of action, but allowing plaintiff to

pursue challenge to agency action under APA).  Moreover, although the IDEA contains an

express waiver of the states' Eleventh Amendment sovereign immunity, the statute does not

contain any provision waiving sovereign immunity for the federal government.  See Defs.' Mem.

---

[15]It is clear, however, that § 1415(i)(2)(A) – the provision on which Plaintiffs rely to
bring their IDEA claim –  only provides federal district court jurisdiction over actions
challenging the findings and decisions made in impartial due process hearings, § 1415(f), or the
findings and decisions made in connection with placement in alternative educational settings, §
1415(k), and that both of these provisions apply only to the findings and decisions made by the
State educational agency or by the local educational agency.  See 20 U.S.C. §§ 1415(f)(1)(A) &
1415(k)(1)(H).  Because Plaintiffs concede that their suit does not challenge the findings and
decisions made by a State educational agency or a local educational agency, see Pls. Mem. at 38
("plaintiffs raise issues of statutory interpretation"), their argument that the IDEA does not
require them to exhaust administrative remedies is without merit.  That principle only applies in
the context of state administrative proceedings.  See Spencer v. Dist. of Columbia, 416 F. Supp.
2d 5, 10 (D.D.C. 2006).

at 15-16.

For these reasons, Plaintiffs' effort to convince this Court that they have standing to pursue their IDEA claims, Pls.' Mem. at 32-34, is unavailing. The IDEA simply does not contain any provision granting Plaintiffs the right to challenge the federal government's regulatory action.[16] See McCoy v. East Tex. Med. Cent. Reg'l Healthcare Sys., 388 F. Supp. 2d 760, 767 (E.D. Tex. 2005) ("Without a private cause of action, . . . the Plaintiffs lack standing to sue."). Accordingly, even if Plaintiffs successfully challenge the Secretary's interpretation of the IDEA in this action, they are not entitled to an award of attorney's fees or any other relief under the IDEA because the statute does not contain any provision authorizing a challenge to the Secretary's regulatory action.[17] Thus, Plaintiffs' IDEA claim should be dismissed.

---

[16]Plaintiffs cite Heldman v. Sobol, 962 F.2d 148 (2d Cir. 1992) as support for their position that they can maintain their IDEA claim against the Secretary. Heldman cannot save their IDEA claim. In that case, as Plaintiffs correctly note, plaintiff sued the New York Commissioner of Education, a state agency, claiming that the state violated the IDEA by enacting state administrative enforcement procedures that violated the due process provisions afforded under the statute. Id. at 151 (noting that the question before the court is "whether section 1415 of IDEA confers on a parent of a disabled child the right to judicial relief for system-wide due process violations"). Thus, this case does not refute the well-established rule that litigants may sue the federal government under a federal statute only if that statute unequivocally provides a private right of action and waives the federal government's sovereign immunity. See, e.g., Public Citizen v. U.S. Trade Representative, 5 F.3d 549, 551 (D.C. Cir. 1993) (explaining that, because Congress did not create a private right of action under the National Environmental Policy Act ("NEPA"), plaintiff must bring its claim for judicial review under the APA).

[17]It is not surprising that Plaintiffs persist in urging this Court to find a cause of action under the IDEA against the Secretary given their desire to recover attorney's fees. See Pls.' Mem. at 13 (conceding that their interest in pursuing their IDEA claim derives from the fact that "the IDEA provides a fee-shifting remedy not available under the APA"). However, Plaintiffs' only potential source of payment for fees – available only if Plaintiffs prevail on their APA claim and ED's position is found not to be "substantially justified" – is the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

**CONCLUSION**

For the foregoing reasons, and those described in Defendants' Memorandum in Support of Defendants' Motion to Dismiss, Or Alternatively For Summary Judgment, the Court should grant Defendants' Motion, dismiss with prejudice Plaintiffs' IDEA claim, and enter judgment in favor of Defendants on Plaintiffs' APA claim.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

SHEILA M. LIEBER
Deputy Branch Director

/s/ Tamra T. Moore_____
TAMRA T. MOORE D.C. Bar No. 488392
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C.  20530
Telephone: (202) 514-8095
Facsimile: (202) 616-8470
Email:  Tamra.Moore@usdoj.gov


Dated: February 22, 2008                    Attorneys for Defendants

I certify that, on this 22nd day of February 2008, I caused a copy of the foregoing Reply

In Support Of Defendants' Motion to Dismiss Or Alternatively, For Summary Judgment And In

Opposition to Plaintiffs' Cross-Motion For Summary Judgment and the attached Defendants'

Response to Plaintiffs' Statement Of Material Facts That Are Not In Dispute to be filed with the

Clerk of the Court via the CM/ECF system, causing them to be served electronically.  The

documents are available for viewing and downloading from the ECF system.


/s/ Tamra T. Moore
Tamra T. Moore

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____ )
BETH and DAVID PETIT, in their                            )
individual capacities and as next friends to their    )
to their minor son, H.P., and                                  )
NICOLE and BENNIE UNDERWOOD,                    )
in their individual capacities and as                       )
next friends to their minor daughter,                     )
A.U.                                                                         )
                     Plaintiffs,                   )
                               )
          v.                                        )     Civ. No. 1:07CV01583 (RMU)
                               )
UNITED STATES DEPARTMENT                          )
OF EDUCATION, and                                            )
MARGARET SPELLINGS, in her official            )
capacity as Secretary of the                                  )
United States Department of Education              )
                               )
               Defendants.                 )
_____)

**DEFENDANTS' RESPONSE TO PLAINTIFFS'**
**STATEMENT OF MATERIAL FACTS THAT ARE NOT IN DISPUTE**

     Pursuant to Local Rules 7.1(h) and 56.1, Defendants, United States Department of

Education and Margaret Spellings, in her official capacity as Secretary of the United States

Department of Education (collectively, "ED" or "the Secretary"), respectfully submit this

response to Plaintiffs' Statement of Material Facts That Are Not In Dispute.

**Defendants' Responses**

     1.  Plaintiffs Petit are parents of a child with a cochlear implant and plaintiffs Underwood
are parents of a child with a cochlear implant.

          **Response**: Undisputed.

2.  Cochlear implant mapping can only be performed by an audiologist who has specific expertise with cochlear implants.  (Admin. R. ED-000388.)  When mapping is performed incorrectly, it can lead to physical harm to the child.  (*Id.* at ED-000388-89).

> **Response:** Undisputed.

3.  Plaintiffs' children received cochlear implant mapping as part of their individualized education plan ("IEP") before defendants implemented regulations that exclude mapping from the definition of "related services" under 30 C.F.R. §§ 300.34, 300.113.  (Compl. ¶ 3.)

> **Response:** Undisputed.

4.  Since these regulations took effect, plaintiffs' children have not received mapping as part of their IEP.  (Compl. ¶ 3.)

> **Response:** Undisputed.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

SHEILA M. LIEBER
Deputy Branch Director

/s/ Tamra T. Moore
TAMRA T. MOORE D.C. Bar No. 488392
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C.  20530
Telephone: (202) 514-8095
Facsimile: (202) 616-8470
Email: Tamra.Moore@usdoj.gov

Dated: February 22, 2008                    Attorneys for Defendants