IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BETH and DAVID PETIT**,** in their individual capacities and as next friends to their minor son, H. P., and NICOLE and BENNIE UNDERWOOD**,** in their individual capacities and as next friends to their minor daughter, A.U.,<br><br>Plaintiffs<br>                v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION, and MARGARET SPELLINGS, in her official capacity as Secretary of the U.S. Department of Education,<br><br>Defendants. | CASE NO.  07-1583-RMU |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR CROSS-MOTION**
<u>**FOR SUMMARY JUDGMENT**</u>

S. William Livingston (D.C. Bar No. 59055)
Emily Johnson Henn (D.C. Bar No. 471077)
Mark W. Mosier (D.C. Bar No. 974887)
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., NW
Washington, DC  20004
Telephone:  (202) 662-6000
Facsimile:  (202) 662-6291

*Attorneys for Plaintiffs Beth and David Petit, and Nicole and Bennie Underwood*

February 29, 2008

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I.     THE DEPARTMENT'S REGULATIONS ARE CONTRARY TO LAW UNDER *CHEVRON*. ................................................................................................................. 2

        A.     The Regulations Are Invalid Under *Chevron*'s First Step Because Congress Clearly Intended to Include Mapping in the Definition of "Related Services." ................................................................................. 2

             1.     The context in which the term "audiology services" appears provides no reason to think that Congress did not intend to give that term its ordinary meaning. ................................................. 4

             2.     The legislative history shows that Congress intended mapping to be included in the definition of "related services." ..................................... 6

        B.     The Secretary's Impermissible Construction of "Related Services" Is Not Supported by the Supreme Court's Decisions in *Tatro* and *Garrett F.* .................. 8

II.     IDEA'S PRIVATE RIGHT OF ACTION PERMITS PLAINTIFFS TO CHALLENGE DEFENDANTS' VIOLATION OF THAT STATUTE. ........................ 11

CONCLUSION ................................................................................................................... 13

ii

# **TABLE OF AUTHORITIES**

## **CASES**

*Appalachian Power Co. v. EPA*, 249 F.3d 1032 (D.C. Cir. 2001) ......................................7

*Cedar Rapids Community School District v. Garrett F.*, 526 U.S. 66 (1999)............. 11-13

*Chamber of Commerce v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996)......................................15

*Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).......................1

*City of Chicago v. Environmental Defense Fund*, 511 U.S. 328 (1994).............................4

*Commodity Futures Trading Commission*, 519 U.S. 465 (1997) .......................................2

*County of Los Angeles v. Shalala*, 192 F.3d 1005 (D.C. Cir. 1999)....................................5

*Davis v. Michigan Department of Treasury*, 489 U.S. 803 (1989).....................................5

*Hill v. Norton*, 275 F.3d 98 (2001) ...................................................................................13

*Hoeft v. Tucson Unified School District*, 967 F.2d 1298 (9th Cir. 1992) ..........................16

*I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421 (1987) ...............................................................9

*International Alliance of Theatrical & Stage Employees v. NLRB*,
    334 F.3d 27 (D.C. Cir. 2003).......................................................................................11

*Irving Independent Sch. District v. Tatro*, 468 U.S. 883 (1984)............................... passim

*Kennecott Greens Creek Min. Co. v. Mine Safety and Health Admin.*,
    476 F.3d 946 (D.C. Cir. 2007).....................................................................................13

*Knight v. C.I.R.*,128 S.Ct. 782, 789 (2008).........................................................................7

*Lamie v. United States*, 540 U.S. 426 (2004).....................................................................7

*MCI Telecom. Corp. v. AT&T*, 512 U.S. 218 (1994)..........................................................1

*Natural Resources Defense Council v. EPA*, 489 F.3d 1250 (D.C. Cir. 2007) .................10

*Northpoint Tech., Ltd. v. FCC*, 412 F.3d 145 (D.C. Cir. 2005).........................................11

*Pardini v. Allegheny Intermediate Unit*, 420 F.3d 181 (3d Cir. 2005) ..............................16

*Russello v. United States*, 464 U.S. 16 (1983) .................................................................... 9

*Sierra Club v. EPA*, 294 F.3d 155 (D.C. Cir. 2002) ............................................................ 10

*Spencer v. District of Columbia*, 416 F. Supp. 2d 5 (D.D.C. 2006) ............................ 15, 16

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001) ..................................................................... 9, 10

*Ullmo v. Gilmour Academy*, 273 F.3d 671 (6th Cir. 2001) ................................................ 14

### STATUTES AND REGULATONS

5 U.S.C. § 701 ...................................................................................................................... 15

20 U.S.C. § 1401 .............................................................................................................. *passim*

20 U.S.C. § 1415 .................................................................................................................. 15

28 U.S.C. § 2412(b) ............................................................................................................. 15

34 C.F.R. § 300.34 ............................................................................................................ 1, 3

34 C.F.R. § 300.113 .......................................................................................................... 1, 3

### MISCELLANEOUS

*American Heritage Stedman's Medical Dictionary* (28th ed. 2006) ..................................... 3

*Webster's New World Dictionary* (3d ed. 1988) ................................................................... 3

S. Rep. No. 108-185 (2003) ................................................................................................... 8

## **INTRODUCTION**

Under *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the Court must decide whether Congress spoke directly to the issue of cochlear implant mapping. This inquiry begins with the text of the Individuals with Disabilities Education Act ("IDEA"), which defines "related services" to include "audiology services." 20 U.S.C. § 1401(26)(A). Plaintiffs argue that Congress spoke directly to the issue because the ordinary meaning of "audiology services" unambiguously includes mapping. According to defendants, the term "audiology services" is sufficiently ambiguous that the Court should defer to the Secretary's interpretation of "related services," which excludes mapping. 34 C.F.R. §§ 300.34(b)(1) & 300.113(b)(1) (2008).

Although defendants argue that "audiology services" is ambiguous, they do not dispute that the dictionary definition of "audiology" encompasses cochlear implant mapping. *See* Defs.' Reply at 4. To show that a term is ambiguous despite a clear dictionary definition, parties often argue that other dictionary definitions dictate a different result. *See, e.g., MCI Telecom. Corp. v. AT&T*, 512 U.S. 218, 225-30 (1994). Defendants make no attempt to do this. Indeed, defendants have never proposed an alternative definition of "audiology services" – much less a definition that either excludes mapping or is ambiguous with respect to mapping.

Instead, defendants ask the Court to ignore the ordinary meaning of "audiology services" because they think the term is ambiguous when read in context with the medical devices exception. *See* Defs.' Reply at 4-7. Defendants press this argument even though they concede that the medical devices exception itself is not ambiguous and does not exclude mapping. *See* Defs.' Reply at 8 n.4, 10 n.6. Defendants cannot adequately explain how an exception that does not address mapping can transform a term that unambiguously includes mapping into one that does not.

Context, of course, is important to interpreting a statute. But it takes more than invoking the principle that statutes should be interpreted as a whole for a court to conclude that Congress did not intend to give a term its ordinary meaning. A court should interpret a term according to its ordinary meaning unless it would "yield patent absurdity" or would "frustrate Congress's clear intention." *See Commodity Futures Trading Comm'n*, 519 U.S. 465, 470 (1997). These concerns are absent in this case. Because "audiology services" should be given its ordinary meaning, cochlear implant mapping is unambiguously included in the definition of "related services." The Department's regulations to the contrary – 34 C.F.R. §§ 300.34(b)(1) & 300.113(b)(1) (2008) – are therefore invalid under *Chevron*.

## ARGUMENT

I.  **THE DEPARTMENT'S REGULATIONS ARE CONTRARY TO LAW UNDER *CHEVRON*.**

   A.  **The Regulations Are Invalid Under *Chevron*'s First Step Because Congress Clearly Intended to Include Mapping in the Definition of "Related Services."**

Congress spoke directly to the issue of cochlear implant mapping by enacting statutory language that unambiguously includes mapping. Section 1401(26)(A) includes mapping in the definition of "related services" by defining that term to include "audiology services." 20 U.S.C. § 1401(26)(A). The ordinary meaning of "audiology services" includes services intended to evaluate and rehabilitate hearing defects and impairments. *See* Pls.' Mem. at 15-16 (quoting *Webster's New World Dictionary* 89 (3d ed. 1988); *American Heritage Stedman's Medical Dictionary* 181 (28th ed. 2006)). Cochlear implant mapping – which requires an audiologist to evaluate a child's response to sound to ensure that the implant is functioning properly – clearly satisfies this definition. Defendants do not dispute that the ordinary meaning of "audiology" includes mapping. Defs.' Reply at 4 ("ED does not dispute

- 2 -

that the term 'audiology,' read in isolation, could be understood to include mapping services for individuals with cochlear implants.").

Although Congress has created an exception to the definition of "related services," this exception has nothing to do with mapping. Section 1401(26)(B) excludes only "a medical device that is surgically implanted, [and] the replacement of such device"; it does not exclude mapping. 20 U.S.C. § 1401(26)(B). Defendants do not dispute this point. Indeed, they make clear that they do "not contend that the medical devices exception should be interpreted to include services," or that the Secretary's decision to exclude mapping was based on ambiguity in this provision. Defs.' Reply at 8 n.4; *id*. at 10 n.6 ("ED does not claim . . . that the medical devices exception is sufficiently ambiguous to exclude both the device itself and services related to the device, nor does ED argue that Congress intended an implied exception for services related to medical devices.").

Defendants argue that "related services" must be ambiguous based on a number of comments they received seeking clarification of whether local agencies could be required to provide mapping. *See* Defs.' Reply at 10. But defendants cite no authority to support the proposition that the Court's interpretation should be influenced by the views of "parents, teachers, . . . [and] public interest groups." (*Id*.) Ambiguity does not arise simply because people may disagree about the meaning of a term. The Supreme Court has held that Congress spoke directly to an issue under *Chevron*, despite the view of dissenting justices who thought the statute was ambiguous. *See, e.g., City of Chicago v. Envtl. Def. Fund*, 511 U.S. 328, 339 (1994).

Defendants initially argued that Congress could not have spoken directly to "cochlear implant mapping" because that phrase appears nowhere in the statute. After plaintiffs explained that the absence of "cochlear implant mapping" is immaterial under *Chevron* so long

- 3 -

as "audiology services" unambiguously includes mapping (Pls.' Mem. at 17-18), defendants did not make this argument in their reply brief. Defendants now focus on the argument that the statute is ambiguous because "audiology services" cannot be given its ordinary meaning in light of the context in which that term is used. This argument is also unpersuasive.

> 1. *The context in which the term "audiology services" appears provides no reason to think that Congress did not intend to give that term its ordinary meaning.*

Defendants object to relying on the ordinary meaning of "audiology" because they think that definition fails to account for the context in which the term is used. Although context must be considered when interpreting a statute, words used in a statute should be given their ordinary meaning unless the context suggests that Congress did not intend this meaning. Defendants fail to explain how the medical devices exception – which they concede neither is ambiguous nor excludes mapping – renders "audiology services" ambiguous with respect to the issue of mapping.

Instead of providing reasons why "audiology services" should not be given its ordinary meaning, defendants focus on why plaintiffs' construction of the *medical devices exception* conflicts with other parts of the "related services" definition. See Defs.' Reply at 6-10. Defendants' reliance on the medical devices exception is misplaced considering that they do not dispute plaintiffs' construction of that provision. See Defs.' Reply at 8 n.4, 10 n.6. Moreover, defendants offer no reason to think that an alternative reading of the medical devices exception would create such tension between that provision and "audiology services" that Congress could not have intended to give "audiology services" its ordinary meaning.

Defendants contend that "Plaintiffs' narrow construction of the medical devices exception cannot withstand scrutiny" because it renders superfluous the medical services exception. (*See* Defs.' Reply at 6.) But this is clearly not the case. The medical *devices*

exception excludes only surgically implanted devices and their replacement. 20 U.S.C. § 1401(26)(A). The medical *services* exception excludes services provided by a physician that are not for diagnostic or evaluation purposes. *See* 20 U.S.C. § 1401(26)(A); *Irving Indep. Sch. Dist. v. Tatro*, 468 U.S. 883 (1984). The medical *services* exception therefore is not superfluous because it excludes a wide range of services that are not excluded by the medical *devices* exception – for example, all surgeries and other non-diagnostic, non-evaluative procedures unrelated to a medical device.

Defendants also argue that the Court should reject plaintiffs' construction of "related services" because it interprets § 1401(26)(A) to include only *services*, and thus renders superfluous § 1401(26)(B)'s exclusion of surgically implanted *devices*. Defs.' Reply at 9-10 (emphasis added).[1] Defendants never explain how this perceived problem calls into question the meaning of "audiology services," or how it impacts the issue of whether Congress spoke directly to cochlear implant mapping, because the exception for *devices* is equally superfluous whether "audiology services" includes or excludes mapping. Nor can the Court interpret the medical devices exception in a way that resolves this tension. The provision cannot be interpreted to exclude only *services* because it expressly applies to devices, and the Court cannot "ratify an interpretation that abrogates the enacted statutory text absent an extraordinarily convincing justification." *Appalachian Power Co. v. EPA*, 249 F.3d 1032, 1041 (D.C. Cir. 2001).[2] Without

---

[1] The exclusion of surgically implanted devices from the definition of "related services" likely resulted from Congress's drafting of a single exception for the definitions of both "assisted technology device" and "related services." *See* Pls.' Mem. at 7-8.

[2] Interpreting the medical devices exception to exclude both devices and services is no solution because this interpretation does not resolve the tension between the inclusion of services and exclusion of devices. Moreover, this interpretation is contrary to the principle that exceptions should be construed narrowly. *See Knight v. C.I.R.*, 128 S.Ct. 782, 789 (2008). A statute should not be interpreted contrary to its plain meaning and in violation of one principle of statutory

a theory of how the meaning of "audiology services" is affected, the Court need not resolve the tension between § 1401(26)'s inclusion of services and exclusion of devices because defendants cannot survive *Chevron*'s first step based on an unrelated ambiguity found elsewhere in the statute. *See Chevron*, 467 U.S. at 842-43 (focusing on whether Congress has "directly spoken to the *precise question at issue*") (emphasis added).

> 2. *The legislative history shows that Congress intended mapping to be included in the definition of "related services."*

The medical devices exception enacted by Congress is significantly narrower than the exception that was originally proposed. In enacting the current definition of "related services," Congress rejected an earlier version of the bill, which expressly excluded programming and maintenance of surgically implanted devices. S. Rep. No. 108-185, at 8 (2003). This proposed bill would have excluded cochlear implant mapping from the definition of "related services." By deleting "programming" and "maintenance" from the medical devices exception, Congress intended to include mapping within the definition of "related services."

Defendants argue that the legislative history is ambiguous because Congress did not explain why it deleted programming and maintenance from the medical devices exception. But the Supreme Court has repeatedly held that, when Congress rejects limiting language, a court should presume that Congress did not intend that limitation. *See I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 442-43 (1987) ("Few principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language.") (citations omitted); *Russello v. United States*, 464 U.S. 16, 23-24 (1983).

---

construction in an attempt to accommodate another interpretive principle – especially when the alternative interpretation does not resolve the perceived problem.

Defendants claim that this principle applies only when Congress both deletes language and then replaces it with an alternative word or phrase. Defs.' Reply at 12 n. 8. The facts of *Russello* show that this argument has no merit. In *Russello*, the petitioner argued that a forfeiture provision requiring a defendant to give up "any interest" should reach only his interest in an "enterprise" because an early version of the bill required forfeiture of "all interest in the enterprise." 464 U.S. at 20. The Court rejected this argument, holding that "[w]here Congress includes limiting language in an earlier version of a bill but deletes it prior to enactment, it may be presumed that the limitation was not intended." *Id.* at 23-24. The Court held that Congress did not intend to limit forfeiture to interests "in the enterprise," and it made no difference that Congress deleted "in the enterprise" without replacing it with an alternative word or phrase.

Because Congress created an express exception to the definition of "related services," the Secretary cannot create an additional exception for mapping unless Congress clearly intended for this exception. *See, e.g., TRW Inc. v. Andrews,* 534 U.S. 19, 28 (2001) ("'Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of a contrary legislative intent.'") (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980)). Defendants contend that the principle set forth in *TRW* does not apply because "the 'related services' definition is not a 'general prohibition.'" Defs.' Reply at 12 n.8. This argument lacks merit. Although *TRW* quoted an earlier Supreme Court decision discussing a "'general prohibition,'" the Court applied this principle to interpret a statute of limitations, not a "general prohibition." *TRW*, 534 U.S. at 28 (quoting *Andrus*, 446 U.S. at 616-17).

Case law from the D.C. Circuit confirms that the *TRW* principle applies here. *See Natural Res. Def. Council v. EPA*, 489 F.3d 1250, 1259-60 (D.C. Cir. 2007) (citing *TRW*, 534

U.S. at 28). In *Natural Resources Defense Council*, the court of appeals considered a *Chevron* challenge to the agency's interpretation of a statutory definition. Because the definition enacted by Congress included an express exception, the court concluded that the agency's creation of an additional exception violated *Chevron*. The court noted that, if Congress intended an additional exception, it could have created it, "[b]ut the Congress did not – and EPA may not, consistent with *Chevron*, create an additional exception of its own." *Id.*; *see also Sierra Club v. EPA,* 294 F.3d 155, 160 (D.C. Cir. 2002) (court "cannot but infer from the presence of these specific exemptions that the absence of any other exemption . . . was deliberate, and that the Agency's attempt to grant such [an exemption] is contrary to the intent of the Congress").

      **B.**    **The Secretary's Impermissible Construction of "Related Services" Is Not Supported by the Supreme Court's Decisions in *Tatro* and *Garrett F*.**

Even if defendants prevail under *Chevron*'s first step, the Secretary's interpretation is invalid if it is inconsistent with the statute's objectives and purpose, or if the Secretary failed to provide a reasonable explanation of why she adopted that construction. *See Int'l Alliance of Theatrical & Stage Employees v. NLRB*, 334 F.3d 27, 33-34 (D.C. Cir. 2003); *Northpoint Tech., Ltd. v. FCC*, 412 F.3d 145, 151 (D.C. Cir. 2005). The Department's regulations fail this test and therefore are invalid under *Chevron*'s second step. *See* Pls.' Mem. at 26-30.

Defendants rely heavily on the Supreme Court's decisions in *Irving Independent School District v. Tatro*, 468 U.S. 883 (1984), and *Cedar Rapids Community School District v. Garrett F.*, 526 U.S. 66 (1999). *See* Defs.' Reply at 15-18. These decisions cannot bear the weight defendants give them. In *Tatro* and *Garret F.*, the Supreme Court interpreted the term "medical services," which appears in the definition of "related services." In defining "related services," Congress intended for some "medical services" to be included within the definition

and for others to be excluded. *See* 20 U.S.C. § 1401(26)(A) (defining "related services" to include "medical services, except that such medical services shall be for diagnostic and evaluation purposes only"). The regulations at issue in *Tatro* interpreted "medical services" to exclude services that require a physician, while requiring local agencies to provide services of a school nurse. 468 U.S. 892. The Supreme Court upheld these regulations because they reasonably interpreted Congress's intent. *Id.*[3]

The Court determined that Congress's decision to draw a line between medical services for diagnostic and evaluative purposes and all other medical services could be explained by a desire "to spare schools from an obligation to provide a service that might well prove unduly expensive and beyond the range of their competence." *Id.* Because the Secretary could reasonably conclude that Congress excluded medical services based on expense and expertise, Congress's intent was furthered by regulations that exclude services requiring a physician but not services provided by a school nurse or a layman because the latter services are generally less expensive and require a lesser degree of expertise. *Tatro*, 468 U.S. 892.

Congress did not intend to place similar limitations on "audiology services" as evidenced by the fact that it did not distinguish between different types of "audiology services." That term, unlike "medical services," is not limited to "diagnostic and evaluation purposes only." 20 U.S.C. § 1401(26)(B). Thus, *Tatro* does not support excluding some audiology services based on their cost or the level of expertise required to provide them. Indeed, *Garret F.* makes

---

[3] Although *Chevron* was decided ten days before *Tatro*, the Court did not apply the *Chevron* framework. Instead, the Court skipped *Chevron*'s first step and considered only whether the regulations were a permissible construction of the statute (*i.e.*, *Chevron*'s second step). In *Garret F.*, the dissenting justices argued that the Court should reconsider *Tatro* because, among other reasons, it failed to apply *Chevron*'s first step. *Cedar Rapids Cmty. Sch. Dist. v. Garrett F.*, 526 U.S. 66, 80 (1999) (Thomas, J., dissenting). The Court declined, citing the principle that "*stare decisis* has 'special force' in statutory interpretation." *Id.* at 78 n.10 (citation omitted).

clear that, as a general rule, Congress did not intend to exclude services based solely on their cost or to exclude them based on a lack of expertise. *See* 526 U.S. at 77 (Because IDEA "does not employ cost in its definition of 'related services,'" excluding a service based on cost would require "judicial lawmaking without any guidance from Congress"); *id.* at 76 n.8 ("District cannot limit educational access simply by pointing to the limitations of existing staff").[4]

        Defendants also contend that they may exclude mapping because *Tatro* permits them to exclude any service that does not have to be provided during the school day or while the child is in school. Defendants claim that *Tatro* "expressly held that the IDEA does not require states to provide services under the statute if those services 'may appropriately be administered to a [disabled] child other than during the school day.'" Defs.' Reply at 16 (quoting *Tatro*, 468 U.S. at 894) (emphasis and alteration in original). But *Tatro* did not hold so broadly. The language quoted by defendants discusses only the "medical services" exception and its implementing regulations, concluding that nurses do not have to provide medication or other treatment if they could be provided other than during the school day. *Tatro*, 468 U.S. at 894 ("[I]f a particular *medication or treatment* may appropriately be administered to a handicapped child other than during the school day, a school is not required to provide *nursing services* to administer it.") (emphasis added). Contrary to defendants' characterization, the Court was not discussing "services under the statute" more generally.

---

[4] Even if the Secretary could exclude services based on cost, the mapping regulations cannot be upheld on that basis because the Secretary did not claim that she excluded mapping because of its cost. *See Hill v. Norton*, 275 F.3d 98, 105 (2001) (court cannot "assume that the arguments of counsel are the same as the Secretary's official position"). Moreover, the administrative record lacks sufficient evidence to establish the cost of mapping because it does not provide an estimate of the cost of a child's visit to an audiologist. *See* Admin. R. ED-001022, ED-000388-89. The comments simply note that it is "very costly," which is insufficient. *See Kennecott Greens Creek Min. Co. v. Mine Safety and Health Admin.*, 476 F.3d 946, 952 (D.C. Cir. 2007).

The limitations placed on "medications and treatments" provided as nursing services cannot be generalized to all services included in the definition of "related services" without fundamentally altering the services required under the statute. The Secretary asserts that mapping does not need to be provided during the school day, presumably because a child could make an appointment to visit an audiologist after school, in the evening, or over the weekend. Of course, the same is true for appointments with the occupational therapists, speech therapists, psychologists, and social workers whose services are "plainly required" under IDEA. *Id.* at 893. If mapping can be excluded because it could be done other than during the school day, then these services could be excluded as well.

## II.     IDEA'S PRIVATE RIGHT OF ACTION PERMITS PLAINTIFFS TO CHALLENGE DEFENDANTS' VIOLATION OF THAT STATUTE.

IDEA creates a private right of action without placing any limitation on who may be sued. *See Ullmo v. Gilmour Academy*, 273 F.3d 671, 679 (6th Cir. 2001) ("IDEA does not specifically name the party against whom such an action may be brought."). Plaintiffs state a valid claim under this provision because they were denied benefits guaranteed by IDEA as a direct result of defendants' violation of the statute. *See* Pls.' Mem. at 31-33. IDEA's private right of action requires nothing more.

Defendants continue to assert that plaintiffs' IDEA claim is barred because IDEA does not expressly waive sovereign immunity for the federal government. Defs.' Reply at 20. But IDEA's lack of an express waiver is irrelevant because sovereign immunity is waived by other statutes. The Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, waives sovereign immunity for the declaratory and injunctive relief sought by plaintiffs. *See Chamber of Commerce v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996) ("The APA's waiver of sovereign immunity applies to any suit whether under the APA or not."). The Equal Access to Justice Act

waives sovereign immunity with respect to plaintiffs' request for attorney's fees. 28 U.S.C. § 2412(b); 20 U.S.C. § 1415(i)(3)(B). Sovereign immunity therefore presents no obstacle to deciding plaintiffs' IDEA claim.

Defendants also contend that IDEA's private right of action "only provides federal district court jurisdiction over actions challenging findings and decisions made in impartial due process hearings, § 1415(f), or the findings and decisions made in connection with placement in alternative educational settings, § 1415(k)." Defs.' Reply at 20 n.15. Although IDEA's private right of action mentions "the findings and decisions made under subsection (f) or (k)," this language merely imposes an exhaustion requirement on parties seeking judicial review. *See, e.g., Spencer v. Dist. of Columbia*, 416 F.Supp.2d 5, 10 (D.D.C. 2006) (discussing IDEA's exhaustion requirement). There are, however, well-established exceptions to the exhaustion requirement. *Id*.

For example, a plaintiff can bring suit under IDEA – without waiting to be aggrieved by findings or a decision under subsection (f) or (k) – if administrative review would be futile. When courts permit suits based on the futility exception, they are not reviewing the findings and decisions made under subsection (f) or (k). *See, e.g., Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1305 (9th Cir. 1992) (permitting IDEA suit under the futility exception despite the fact that plaintiffs had not sought a due process hearing and noting that "[t]here are certain situations in which it is not appropriate to require the use of due process"); *Pardini v. Allegheny Intermediate Unit*, 420 F.3d 181, 192 n.13 (3d Cir. 2005) (Because plaintiffs raised a purely legal challenge, they could proceed under IDEA even though they brought suit in federal court before the due process hearing was held.). Because administrative proceedings would be futile, plaintiffs have a valid claim under IDEA.

On the merits of plaintiffs' IDEA claim, defendants argue that they have not violated the statute because the Department's regulations are not contrary to law and do not lessen the protections provided under the 1983 regulations. Defs.' Reply at 19. The Department's regulations contradict the statute because the definition of "related services" unambiguously includes cochlear implant mapping. Pls.' Mem. at 13-26. Moreover, even if some ambiguity existed, the mapping regulations would still be contrary to law because they do not further the statute's objectives and purpose. Pls.' Mem. at 26-30.

Contrary to defendants' claims, the fact that cochlear implants were not available until 1990 does not mean that mapping is not covered under the 1983 regulations. Congress did not intend this provision to require local agencies to provide only those services available in 1983. Instead, it requires a court to look to the regulations in effect in 1983 and determine whether, if those regulations were still in effect today, the service would be required. *See* Pls.' Mem. at 39-41. Because the regulations in effect on July 20, 1983 provided for "audiology," they require local agencies to provide cochlear implant mapping. *Id.*

## **CONCLUSION**

For the foregoing reasons, and the reasons stated in plaintiffs' memorandum in support of their cross-motion for summary judgment, plaintiffs' Cross-Motion for Summary Judgment should be granted.

Respectfully submitted,

/s/ Mark W. Mosier
S. William Livingston (D.C. Bar No. 59055)
Emily Johnson Henn (D.C. Bar No. 471077)
Mark W. Mosier (D.C. Bar No. 974887)
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., NW
Washington, DC  20004
Telephone:  (202) 662-6000
Facsimile:  (202) 662-6291

February 29, 2008

*Attorneys for Plaintiffs Beth and David Petit, and Nicole and Bennie Underwood*

- 14 -

- 15 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Reply in Support of Their Cross-Motion for Summary Judgment was filed using the Court's electronic case filing system this 29th day of February, 2008, which automatically results in service on all counsel of record registered on ECF.

/s/ Mark W. Mosier
Mark W. Mosier
*Attorney for Plaintiffs*
