# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

BETH and DAVID PETIT *et al.*,          :
                                        :
        Plaintiffs,          :          Civil Action No.:          07-1583 (RMU)
                                        :
        v.          :          Document Nos.:          11, 14
                                        :
UNITED STATES DEPARTMENT OF             :
EDUCATION,                              :
                                        :
        and          :
                                        :
MARGARET SPELLINGS,                     :
in her official capacity as Secretary of the          :
Department of Education,                :
                                        :
        Defendants.          :

## MEMORANDUM OPINION

### Denying the Defendants' Motion to Dismiss the Plaintiffs' IDEA Claim; Granting the Defendants' Motion for Summary Judgment on the Plaintiffs' APA Claim; Denying the Plaintiffs' Cross-Motion for Summary Judgment

## I. INTRODUCTION

This matter is before the court following the promulgation of regulations by the

Department of Education ("the Department") interpreting a provision of the Individuals with

Disabilities Education Act ("the IDEA" or "the Act"), 20 U.S.C. §§ 1400 *et seq.* The defendants

move to dismiss, or alternatively for summary judgment,[1] asserting that the plaintiffs lack

standing to bring a claim under the IDEA, that the federal government is immune from suit under

the IDEA, and that the court must defer to the agency's interpretation of the statutory provision at

---

[1] Because the portion of the defendants' "Motion to Dismiss or Alternatively, for Summary Judgment" that relies on Rule 12(b)(6) addresses only the plaintiffs' IDEA claim, and fails to address the plaintiffs' APA claim, the court will construe the motion as a motion to dismiss the IDEA claim and for summary judgment on the APA claim. *See* Defs.' Mot. to Dismiss or Alternatively, for Summ. J. ("Defs.' Mot.") at 13-18.

issue.  The plaintiffs have filed a cross-motion for summary judgment, arguing that the

regulations contravene the clear meaning and intent of the statute and are, therefore, invalid.

Because the plaintiffs have stated a claim under the IDEA, the court denies the defendants'

motion to dismiss that claim.  But because the statutory provision at issue is ambiguous and the

agency's interpretation is entitled to deference, the court grants the defendants' motion for

summary judgment on the plaintiffs' Administrative Procedure Act ("APA") claim and denies

the plaintiffs' cross-motion for summary judgment.


## II.  FACTUAL & PROCEDURAL BACKGROUND

The IDEA entitles all children with disabilities to "a free appropriate public education

["FAPE"] . . . designed to meet their unique needs and prepare them for further education,

employment, and independent living."  20 U.S.C. § 1400(d)(1)(A).  A FAPE, in turn, is defined

as

> special education *and related services* that (A) have been provided at public expense,
> under public supervision and direction, and without charge; (B) meet the standards
> of the State educational agency; (C) include an appropriate preschool, elementary
> school, or secondary school education in the State involved; and (D) are provided in
> conformity with the individualized education program required under [20 U.S.C.]
> section 1414(d).

20 U.S.C. § 10-401(9) (emphasis added).  Finally, the IDEA defines "related services" as

> transportation, and such developmental, corrective, and other supportive services
> (including . . . audiology services . . . and medical services, except that such medical
> services shall be for diagnostic and evaluation purposes only) as may be required to
> assist a child with a disability to benefit from special education, and includes the
> early identification and assessment of disabling conditions in children.

20 U.S.C. § 1401(26)(A).  The statute goes on to list one exception to the foregoing definition: "[t]he term [related services] does not include a medical device that is surgically implanted, or the replacement of such device." 20 U.S.C. § 1401(26)(B).  Congress added this exception ("the medical device exception") when it amended the IDEA in 2004.  Compl. ¶ 3.

Parts A and B of subsection 1401(26), and their application to cochlear implant mapping, form the crux of this dispute.  A cochlear implant is a type of hearing aid that partially replaces the functioning of the cochlea, the part of the inner ear that converts sound waves into electrical stimuli.  *Id.* ¶ 18; Defs.' Mot. to Dismiss or Alternatively, for Summ. J. ("Defs.' Mot.") at 8. Cochlear implants assist deaf children whose hearing deficiency is too severe for the use of a traditional hearing aid.  Compl. ¶ 17.  The implant has two components: the external component consists of a microphone worn at ear level and a pager-size speech processor that transmits sound to the internal component.  *Id.* ¶ 19; Defs.' Mot. at 8-9.  The internal component is a surgically implanted receiver connected to electrodes; the receiver stimulates the electrodes so that the brain receives audio signals.  Compl. ¶ 20; Defs.' Mot. at 8-9.  For a cochlear implant to function properly, a specialist must adjust it to ensure that it provides the optimal amount of stimulation to the auditory nerve.  Compl. ¶¶ 21-22; Defs.' Mot. at 9.  This process is called "mapping."  *Id.* The first mapping session typically takes place after the receiver is surgically implanted; the implant is then calibrated to the child's unique needs through subsequent mapping sessions.  Pls.' Cross-Mot. for Summ. J. & Opp'n to Defs.' Mot. to Dismiss or Alternatively, for Summ. J. ("Pls.' Mot.") at 5-6; Defs.' Mot. at 9.

The parties dispute whether the IDEA provides coverage for cochlear implant mapping. On August 14, 2006, after a notice-and-comment period, the Secretary of Education ("the

Secretary"), having determined that the statute was ambiguous on this point, promulgated regulations excluding mapping from the definition of "related services."  Assistance to States for the Education of Children With Disabilities and Preschool Grants for Children With Disabilities, 34 C.F.R. § 300.34(b)(1).  Although the regulations do not consider mapping services to be a required part of a FAPE, public agencies are required to "ensure that the external components of surgically implanted medical devices [i.e. cochlear implants] are functioning properly."  *Id.* § 300.113(b)(1).

The plaintiffs, parents of children with cochlear implants who receive special education services, brought suit under the IDEA and the APA on September 6, 2007, arguing that the exclusion of mapping from the definition of "related services" contravenes the IDEA, exceeds the Secretary's rulemaking authority and is arbitrary, capricious and an abuse of discretion. Compl. ¶¶ 46-53.  The defendants then filed a motion to dismiss under Rule 12(b)(6) or, alternatively, for summary judgment on December 13, 2007, contending that the plaintiffs have failed to state an IDEA claim, Defs.' Mot. at 2-3, and further, that the defendants are entitled to summary judgment on the plaintiffs' APA claim because the regulations are a permissible construction of the IDEA, *id.* at 3.  On January 30, 2008, the plaintiffs filed an opposition to the motion to dismiss and a cross-motion for summary judgment, again urging the court to invalidate the regulations under the IDEA and the APA.  *See generally* Pls.' Mot.  The court addresses these issues in turn.

## III.  ANALYSIS

### A.  The Defendants' Motion to Dismiss the Plaintiffs' IDEA Claim

The plaintiffs seek relief under the IDEA.  Compl. ¶¶ 46-49.  Specifically, they claim that by excluding cochlear implant mapping from the definition of "related services" provided under IDEA, the defendants "enacted regulations that were not necessary to ensure compliance with the statute, that violated and contradicted provisions of IDEA, and that substantively lessened the protections provided to children with disabilities" in violation of 20 U.S.C. § 1406(a), (b)(1) and (b)(2).[2]  *Id.* ¶ 49.  The defendants move to dismiss the IDEA claim, asserting that the plaintiffs' failure to exhaust their administrative remedies bars their claim, Defs.' Mot. at 15 n.4; the only proper defendant to the claim is the state or local agency rather than the federal government, *id.* at 13; and the federal government is immune from suit under the IDEA, *id.* at 16-18.

### 1.  Legal Standard for Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  The complaint need only set forth a short and plain

---

[2]     20 U.S.C. § 1406(a) and (b) state:
>     (a) In general: In carrying out the provisions of this chapter, the Secretary shall issue regulations under this chapter only to the extent that such regulations are necessary to ensure that there is compliance with the specific requirements of this chapter.
>     (b) Protections provided to children: The Secretary may not implement, or publish in final form, any regulation prescribed pursuant to this chapter that (1) violates or contradicts any provision of this chapter; or (2) procedurally or substantively lessens the protections provided to children with disabilities under this chapter, as embodied in regulations in effect on July 20, 1983 (particularly as such protections related to parental consent to initial evaluation or initial placement in special education, least restrictive environment, related services, timelines, attendance of evaluation personnel at individualized education program meetings, or qualifications of personnel), except to the extent that such regulation reflects the clear and unequivocal intent of Congress in legislation.

statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sonoma N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet, the plaintiff must allege "any set of facts consistent with the allegations." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-56, instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim [] would entitle him to relief"); *Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008) (affirming that "a complaint needs *some* information about the circumstances giving rise to the claims"). While these facts must "possess enough heft to 'sho[w] that the pleader is entitled to relief,'" a complaint "does not need detailed factual allegations." *Twombly*, 127 S. Ct. at 1964, 1966. In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir.

2003); *Browning*, 292 F.3d at 242.  While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations.  *Warren v. District of Columbia*, 353 F.3d 36, 40 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242.

## 2.  The Court Denies the Motion to Dismiss[3]

### a.  The Exhaustion Requirement is Waived Because Exhaustion Would Be Futile

The defendants maintain that the plaintiffs cannot bring suit because they are not "aggrieved parties" and have failed to exhaust their administrative remedies as the IDEA requires.  Defs.' Mot. at 15 n.1.  The plaintiffs disagree, claiming that they are "aggrieved parties" because they "were denied benefits guaranteed under IDEA as a direct result of defendants' violation of the statute," Pls.' Mot. at 32, and that they are entitled to a waiver of the exhaustion requirement because exhaustion would be futile, *id.* at 36-38.

The IDEA states:

> Any party aggrieved by the findings and decision made under subsection (f) [addressing findings made after an impartial due process hearing] or (k) [concerning decisions regarding placement in an alternative educational setting] of this section who does not have the right to an appeal . . . and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section.

20 U.S.C. § 1415(i)(2)(A).  As the defendants correctly suggest and the plaintiffs concede, to file suit in federal court, the IDEA requires the plaintiffs to have exhausted the state administrative process and be "aggrieved" by the findings made in those due process hearings.  Defs.' Mot. at

---

[3]     As a preliminary matter, the court notes that the IDEA explicitly creates a private right of action for individuals aggrieved by a violation of the Act.  20 U.S.C. § 1415(i)(2)(A).  Consequently, the defendants' reliance on decisions in which the court declines to infer an implied right of action when APA relief is available as a separate remedy is misplaced.  *See* Defs.' Mot. at 16-17.

15 n.1; Pls.' Mot. at 36; *see also Cox v. Jenkins*, 878 F.2d 414, 418 (D.C. Cir. 1989) (noting that

the philosophy underpinning the IDEA requires a plaintiff to exhaust administrative remedies

before turning to the courts).  A plaintiff is entitled to a waiver of the exhaustion requirement,

however, if exhaustion would be futile.  *Honig v. Doe*, 484 U.S. 305, 327 (1988) (addressing the

exhaustion requirement of the Education of the Handicapped Act, the predecessor to the IDEA).

Exhaustion of administrative remedies is futile only if the ultimate denial of relief is certain.

*Marine Mammal Conservancy, Inc. v. Dep't of Agric.*, 134 F.3d 409, 413 (D.C. Cir. 1998) (citing

*U.D.C. Chairs Chapter, Am. Ass'n of Univ. Professors v. Bd. of Trs. of Univ. of D.C.*, 56 F.3d

1469 (D.C. Cir. 1995)).

    Here, if the plaintiffs attempted to obtain coverage for cochlear implant mapping through

the state administrative process, the hearing officer would have no choice but to apply the

Department's regulations and deny coverage for mapping.  *See Heldman v. Sobol*, 962 F.2d 148,

159 (2d Cir. 1992) (determining that because the plaintiff's claim challenged a regulation as

violating the mandate of the IDEA, "neither the [State Education Department] Commissioner nor

the assigned hearing officer ha[d] the authority to alter the [challenged practice]"); *see also* 34

C.F.R. § 300.34(b)(1) (excluding mapping from the definition of "related services").

Accordingly, because ultimate denial of the plaintiffs' sought-after relief is certain, *see Marine*

*Mammal*, 134 F.3d at 413, the plaintiffs may bring suit notwithstanding their failure to exhaust

their administrative remedies under the IDEA, *see Heldman*, 962 F.2d at 159.

### b.  The Federal Government is Properly Named as a Defendant

    The defendants next suggest that the IDEA creates no express or implied private right of

action against the federal government, and the structure and history of the IDEA make clear that

"Congress placed the burdens of [complying with the IDEA] squarely on the states' shoulders." Defs.' Mot. at 13-14.  They argue, therefore, that the state or local agency – not the federal government – is the only proper defendant to an IDEA claim.  *Id.* at 16.  In response, the plaintiffs maintain that they may sue the federal government for attorneys' fees and declaratory and injunctive relief under the IDEA because the waiver of the federal government's sovereign immunity contained in the APA applies to their IDEA claim.  Pls.' Mot. at 35-36.

A private right of action against the federal government must be created by Congress. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  As the plaintiffs concede, the IDEA contains no express waiver of the federal government's sovereign immunity.  Pls.' Mot. at 35; *see also Ullmo v. Gilmour Acad.*, 273 F.3d 671, 679 (6th Cir. 2001) (observing that the "IDEA does not specifically name the party against whom such an action may be brought"); *David D. v. Dartmouth School Comm.*, 775 F.2d 411, 422 (1st Cir. 1985) (noting that Congress intended for the states to be "an opposing party, if not the sole party to" IDEA claims brought under § 1415). The APA, however, waives the federal government's sovereign immunity for suits seeking relief other than money damages, 5 U.S.C. § 702, and this waiver "applies to any suit whether under the APA or not," *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996); *see also Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 186 (D.C. Cir. 2006) (rejecting the argument that the waiver of sovereign immunity applies only to actions arising under the APA); *Sea-Land Serv., Inc. v. Alaska R.R.*, 659 F.2d 243, 244 (D.C. Cir. 1981) (examining the legislative history of § 702 and determining that Congress intended to "elimina[te] the sovereign immunity defense in *all* equitable actions for specific relief against a Federal agency or officer acting in an official capacity").

Moreover, although the text and legislative history of the IDEA indicate that Congress intended to make the states responsible for carrying out the Act's requirements, Defs.' Mot. at 14-15, the defendants provide no support for their proposition that, by making the states responsible for upholding the IDEA, Congress intended to foreclose IDEA suits against the federal government, *see id.* at 13-18.  Accordingly, the court rejects the defendants' contention that the federal government is not a proper defendant to this suit.  In light of the foregoing, the court denies the defendants' motion to dismiss the plaintiffs' IDEA claim.

## B.  The Court Grants the Defendants' Motion for Summary Judgment and Denies the Plaintiffs' Cross-Motion for Summary Judgment on the Plaintiffs' APA Claim

In addition to seeking relief under the IDEA, the plaintiffs claim that the regulations excluding mapping services are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," and thus violate the APA, 5 U.S.C. § 706(2).  Compl. ¶¶ 51-53.  The defendants move for summary judgment, arguing that as a matter of law, the regulations comply with the law and are not arbitrary, capricious or an abuse of discretion.  The plaintiffs filed a cross-motion for summary judgment, asserting that the IDEA unambiguously provides for mapping services and that the regulations excluding those services are impermissible as a matter of law.

### 1.  Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

### 2. Legal Standard for Judicial Review of Agency Interpretations of Statutes

The Supreme Court set forth a two-step approach to determine whether an agency's interpretation of a statute is valid under the APA. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). This approach, commonly referred to as "*Chevron* deference," requires the court to first look to "whether Congress has spoken to the precise question at issue." *Id.* at 842. If so, the court ends its inquiry. *Id.* But, if the statute is ambiguous or silent, the second step requires the court to defer to the agency's position, so long as it is reasonable. *Id.* at 843; *Sea-Land Servs., Inc.*, 137 F.3d at 645 (holding that "[*Chevron*] deference comes into play of course, only as a consequence of statutory ambiguity, and then only if the reviewing court finds an implicit delegation of authority to the agency"). In applying *Chevron*, the Supreme Court has held that "[a]dministrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001). Indeed, "judgment about the best regulatory tools to employ in a particular situation is . . . entitled to considerable deference from the generalist judiciary." *W. Union Int'l, Inc. v. Fed. Commc'ns Comm'n*, 804 F.2d 1280, 1292 (D.C. Cir. 1986).

### 3. The Text of the IDEA is Ambiguous With Respect to Whether Mapping is a "Related Service"

Because the IDEA contains no explicit provision for mapping services, Defs.' Mot. at 21, the defendants argue that it is unclear whether mapping qualifies as a "related service," *id.* at 23-

24 (citing *A.U. v. Roane County Bd. of Educ.*, 501 F. Supp. 2d 1134, 1144 (E.D. Tenn. 2007)).[4]
The plaintiffs respond that Congress clearly spoke to the question of whether mapping is a
"related service."  Pls.' Mot. at 17-18.  In addition, the plaintiffs dispute the applicability of the
district court decision cited by the defendants, *see A.U.*, 501 F. Supp. 2d at 1144, arguing that it
did not address the question of whether Congress intended for the IDEA to cover mapping
services, Pls.' Mot. at 25-26.  Rather, the plaintiffs contend, the *A.U.* court merely agreed in
dictum with the position taken by the hearing officer and the school district that the IDEA was
ambiguous on the question of mapping.  *Id.* at 25.

> The fact that the text of a statute does not expressly answer the question at issue does not
preclude a court from determining that Congress has spoken directly to the issue.  The D.C.
Circuit has explained:

> The question at step one [of the *Chevron* inquiry] . . . is whether "the intent of
> Congress is clear" . . . .  To determine Congressional intent, we must use "traditional
> tools of statutory construction." . . . .  The most traditional tool, of course, is to read
> the text; if it clearly requires a particular outcome, then the mere fact that it does so
> implicitly rather than expressly does not mean that it is "silent" in the *Chevron* sense.

*Engine Mfrs. Ass'n v. U.S. Envtl. Prot. Agency*, 88 F.3d 1075, 1088 (D.C. Cir. 1996) (quoting
*Chevron*, 467 U.S. at 842-43 & 843 n.9).  As a result, the court cannot conclude, based solely on
the fact that the IDEA does not expressly mention "mapping," that Congress has not spoken to
the question of whether mapping services constitute a "related service."

> Nor is this court persuaded by the *A.U.* court's remark that the statute is ambiguous with
respect to mapping.  *See A.U.*, 501 F. Supp. 2d at 1144.  First, the court notes that the decisions

---

[4]   The *A.U.* court stated, "[t]he hearing officer found, and in its brief [the defendant] concedes, that
the amendment [to the IDEA adding the medical device exception] is 'somewhat ambiguous.'
The court agrees.  The amendment to the definition of related services is anything but clear."
*A.U. v. Roane County Bd. of Educ.*, 501 F. Supp. 2d 1134, 1144 (E.D. Tenn. 2007).

of sister district courts, of course, are not binding on this court.  *Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 430 n.10 (1996).  Second, the question of whether the statute is ambiguous, although addressed in dictum, was not briefed before the *A.U.* court in the context of a *Chevron* inquiry.  *See generally A.U.*, 501 F. Supp. 2d.  Therefore, the *A.U.* court's determination is not directly on point.

In addition, the defendants proffer as evidence of the statute's ambiguity the multitude of comments submitted to the Department, seeking clarification as to whether the IDEA provides coverage for mapping services.  Defs.' Mot. at 24-25 (citing Admin. R. at ED-003556, ED-003672); Reply in Support of Defs.' Mot. to Dismiss or Alternatively, for Summ. J. and in Opp'n to Pls.' Cross Mot. for Summ. J. ("Defs.' Reply") at 10.  The plaintiffs, on the other hand, dispute whether the views of the parents, teachers, educational agencies and other organizations that considered the statute ambiguous should influence the court's interpretation of the statute.  Pls.' Reply in Support of Their Cross Mot. for Summ. J. ("Pls.' Reply") at 3.

The defendants cite no authority establishing that it is proper, under the first step of the *Chevron* test, to consider the opinions of lay persons and non-legal organizations as to whether a statute is clear or ambiguous.  Rather, "[t]he traditional tools [of statutory construction] include examination of the statute's text, legislative history, and structure . . . as well as its purpose." *Bell Atl. Tel. Cos. v. Fed. Commc'n Comm'n*, 131 F.3d 1044, 1047 (D.C. Cir. 1997) (citations omitted).  Accordingly, the court's *Chevron* inquiry is unaffected by the comments that the Department received.

The final argument that the defendants advance in support of their motion is that the medical device exception in 20 U.S.C. § 1401(26)(B)[5] renders ambiguous the definition of "audiology services" in 20 U.S.C. § 1401(26)(A).[6]  Defs.' Mot. at 23.  The plaintiffs, on the other hand, contend that the text of the IDEA unambiguously provides coverage for mapping services because the regulations list "audiology services" as a "related service."  Pls.' Mot. at 15 (citing 20 U.S.C. § 1401(26)(A)).  Citing the dictionary definition of "audiology"[7] and the statutory canon directing courts to interpret a term according to its ordinary meaning unless it would "yield patent absurdity" or "frustrate Congress's clear intention," the plaintiffs maintain that mapping services fall under the ordinary, common meaning of "audiology services."  Pls.' Mot. at 15-16; Pls.' Reply at 2 (citing *Dunn v. Commodity Futures Trading Comm'n*, 519 U.S. 465, 470 (1997)).  The plaintiffs also submit that mapping services can only be performed by an audiologist and urge the court to implement the Supreme Court's practice of defining a service-related term by focusing on the service provider.  *Id*. at 16; *see also Cedar Rapids Cmty. Sch. Dist. v. Garret F.*, 526 U.S. 66, 73-74 (1999); *Irving Indep. Sch. Dist. v. Tatro*, 468 U.S. 883,

---

[5]   The medical device exception reads: "The term ['related services'] does not include a medical device that is surgically implanted, or the replacement of such device."  20 U.S.C. § 1401(26)(B).

[6]   20 U.S.C. § 1401(26)(A) defines "related services" as "transportation, and such developmental, corrective, and other supportive services (including . . . audiology services . . . and medical services, except that such medical services shall be for diagnostic and evaluation purposes only)" required to assist children covered under the Act.

[7]   Webster's New World Dictionary defines "audiology" as "the evaluation of hearing defects and the rehabilitation of those who have such defects."  Similarly, the American Heritage Stedman's Medical Dictionary defines the term as "[t]he study of hearing disorders through the identification and measurement of hearing impairment."  Pls.' Cross-Mot. for Summ. J. & Opp'n to Defs.' Mot. to Dismiss or Alternatively, for Summ. J. ("Pls.' Mot.") at 15-16 (citations omitted).

892-94 (1984) (defining the "medical services" clause of the IDEA as "services that must be performed by a physician").

Underpinning the parties' arguments concerning the relationship between the audiology services clause and the medical device exception is the question of the proper breadth of the court's textual analysis. The plaintiffs advocate a narrow approach, contending that the court need not look beyond the dictionary definition of "audiology services" to determine that the IDEA encompasses mapping services, Pls.' Mot. at 15, while the defendants urge a more expansive inquiry, Defs.' Mot. at 22-23. Circuit precedent favors a broad approach.

> [T]o prevent statutory interpretation from degenerating into an exercise in solipsism, "we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law" . . . . "[W]e consider not only the language of the particular statutory provision under scrutiny, but also the structure and context of the statutory scheme of which it is a part."

*County of L.A. v. Shalala*, 192 F.3d 1005, 1014 (D.C. Cir. 1999) (citations omitted); *see also Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) (holding that the "words of a statute must be read in their context and with a view to their place in the overall statutory scheme"). The court, therefore, rejects the plaintiffs' attempt to oversimplify the interpretation of the statute by relying solely on the dictionary definition or a provider-based interpretation. *See* Pls.' Mot. at 15-16. Instead, to determine if the statute is ambiguous as to whether the IDEA provides coverage for mapping services, the court examines the entire "related services" clause, including subpart (A) (establishing that the term "related services" includes audiology services) and subpart (B) (excepting from the definition of "related services" "a medical device that is surgically implanted, or the replacement of such device"), in its statutory context. 20 U.S.C. § 1401(26).

The plaintiffs also contend that the "audiology services" clause encompasses mapping even if read in conjunction with the medical device exception.  Pls.' Mot. at 19-22.  Asserting that the exception applies to a surgically implanted device or the replacement of such device, the plaintiffs maintain that because mapping is a service – not a device or the replacement thereof – the exception has no application to mapping.  *Id.*  Although this approach has some surface appeal, any clarity it appears to bring to the statute is lost when the medical device exception is viewed in context; that is, the medical device exception is situated within the definition of related *services*.  20 U.S.C. § 1401(26).  Plainly, this creates ambiguity as to whether the medical device exception applies to services related to those devices (i.e., mapping).[8]

In addition, the plaintiffs invoke the statutory canon *expressio unius est exclusio alterius*[9] to argue that the existence of the express exception for surgically implanted devices precludes the court from inferring an exception for services related to those devices.  Pls.' Mot. at 21-22.  But because this canon is considered "an especially feeble helper in an administrative setting, where Congress is presumed to have left to reasonable agency discretion questions that it has not directly resolved," it does not sway the court in determining Congress's intent with respect to

---

[8]     Indeed, this ambiguity weighs against the plaintiffs' position, not in favor of it.  If the court were to accept the plaintiffs' argument that the medical device exception applies only to devices and not to services related thereto, the medical device exception would have no application at all to the definition of "related services."  Accordingly, the plaintiffs' interpretation would violate the statutory canon that encourages construing a statute "so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless or nugatory."  *See Air Line Pilots Ass'n Int'l v. Pension Benefits Guar. Corp.*, 193 F. Supp. 2d 209, 218 n.4 (D.D.C. 2002).

[9]     The canon *expressio unius est exclusio alterius* dictates that "explicit direction for something in one provision, and its absence in a parallel provision, implies an intent to negate it in the second context."  *Cheney R. Co. v. Interstate Commerce Comm'n*, 902 F.2d 66, 68 (D.C. Cir. 1990) (quoting *Clinchfield Coal Co. v. Fed. Mine Safety & Health Review Comm'n*, 895 F.2d 773, 779 (D.C. Cir. 1990)).

cochlear implant mapping.  *Cheney R. Co. v. Interstate Commerce Comm'n*, 902 F.2d 66, 68 (D.C. Cir. 1990) (citing *Chevron*, 467 U.S. at 843-44).

Finally, the plaintiffs argue that it is implausible to think that Congress intended the medical device exception to apply to related services, "in light of the distinction Congress has drawn between a device and services related to that device elsewhere in the statute," and therefore, the medical device exception unambiguously has no application to mapping services. Pls.' Mot. at 24.  The defendants counter that more ambiguity – not less – is created by the fact that Congress explicitly distinguished between devices and services in other parts of the statute, but made no such express distinction here.  Defs.' Reply at 8-10.  The court agrees with the defendants; it cannot infer from the fact that Congress explicitly distinguished between devices and services elsewhere in the statute that Congress intended to draw the same distinction here. Accordingly, the court rejects the plaintiffs' claim that the text of the IDEA clearly dictates coverage for cochlear implant mapping.

### 4.  The Legislative History of the 2004 Amendment to the IDEA is Ambiguous With Respect to Whether Mapping is a "Related Service"

In support of their claim that Congress unambiguously considered mapping a "related service," the plaintiffs assert that the legislative history of the 2004 amendment of the IDEA conclusively demonstrates Congress's intent.  Pls.' Mot. at 22.  Specifically, the plaintiffs cite a proposal of the 2004 amendment to the Act by the Senate Health, Education, Labor and Pensions (HELP) Committee, in which the medical device exception exempted from the definition of "related services" "a medical device that is surgically implanted, *or the postsurgical maintenance, programming*, or replacement of such device."  *Id.*; Compl. ¶ 28 (citing S. Rep.

No. 108-185, S. Bill 1248, at 107 (2003) (emphasis added in Compl.)).  The final version of the

exception reads: "The term ['related services'] does not include a medical device that is

surgically implanted, or the replacement of such device."  20 U.S.C. § 1401(26)(B).  The

plaintiffs contend that Congress's intent to provide for cochlear implant mapping is clear from its

decision to omit the references to postsurgical maintenance and programming in the final version

of the medical device exception.  Pls.' Mot. at 22-23.  The plaintiffs also reference a letter that

Senator Judd Gregg, Chairman of the HELP Committee, wrote to Secretary Spellings after the

enactment of the 2004 amendment, in which he stated that he omitted the maintenance and

programming language after determining that "it was appropriate that the definition of related

services cover the cost of the maintenance and programming of surgically implanted devices."

Pls.' Mot. at 2-3 (quoting Admin. R. at ED-000787); *see also id.* at 24.

      The defendants, on the other hand, assert that, like the text of the statute itself, the

legislative history of the IDEA is ambiguous as to whether cochlear implant mapping constitutes

a "related service."  Defs.' Mot. at 25.  With respect to the earlier version's exclusion of

postsurgical maintenance and programming, the defendants note that Congress merely omitted

this language from the final version of the bill, rather than explaining its reason for the omission

or replacing that language with an express provision establishing coverage for mapping services.

*Id.* at 26.  Consequently, according to the defendants, Congress's intent on the issue is unclear: it

could have intended to provide coverage for mapping, but alternatively, it could have considered

the language superfluous or deliberately created a gap for the Secretary to fill.  *Id.* at 27-28.  The

defendants also dispute whether the court should consider Senator Gregg's letter to the Secretary

in determining the legislative intent behind the 2004 amendment.  Defs.' Reply at 12-13.

Courts may examine legislative history in addition to statutory text to determine whether Congress has spoken to the precise question at issue. *Bell Atl. Tel. Cos.*, 131 F.3d at 1047. This Circuit has determined, however, that "post-enactment statements of legislators involved in the enactment process . . . have no probative weight and represent only the personal views of the legislator." *Petry v. Block*, 697 F.2d 1169, 1171 (D.C. Cir. 1983). Therefore, the court disregards Senator Gregg's statements concerning the proper interpretation of the 2004 amendment. Further, the fact that Congress has deleted a phrase "in the throes of the legislative process does not ordinarily constitute, without more, evidence of a specific legislative intent" for purposes of the *Chevron* inquiry. *Edison Elec. Inst. v. U.S. Envtl. Prot. Agency*, 2 F.3d 438, 451 (D.C. Cir. 1993).[10] Accordingly, the omission of the maintenance and programming language from the final version of the 2004 amendment is insufficient to support the conclusion that Congress spoke unambiguously to the question of whether mapping constitutes a "related service."

### 5. The Regulations Are a Permissible Construction of the IDEA

Having concluded that Congress did not speak directly to the question of whether cochlear implant mapping constitutes a "related service" under the IDEA, the court must defer to

---

[10] The plaintiffs cite *Russello v. United States* for the competing proposition that "[w]here Congress includes limiting language in an earlier version of a bill but deletes it prior to enactment, it may be presumed that the limitation was not intended." Pls.' Mot. at 22-23 (citing *Russello*, 464 U.S. 16, 23-24 (1983)). "This tenet of statutory construction is not inviolable." *U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1156 (3d Cir. 1991). Moreover, the task of the *Russello* Court was to definitively interpret the statute's meaning, whereas the task here is to determine whether Congress unambiguously expressed its intent or if, instead, it implicitly delegated its authority to the agency, in which case the court must defer to any reasonable agency interpretation of the statute. *See Abbott Labs. v. Young*, 920 F.2d 984, 995 (D.C. Cir. 1990), *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). Accordingly, the plaintiffs' reliance on *Russello* is inapposite.

the Department's position as long as it is reasonable and does not conflict with the statute's plain language. *Chevron*, 467 U.S. at 843; *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 292 (1988). The defendants assert that the regulations excluding mapping are reasonable given Congress's decision to exclude surgically implanted medical devices from the definition of "related services." Defs.' Mot. at 30. And the defendants maintain that the decision to exclude mapping was the result of a reasoned analysis by the Department, taking into account such factors as the fact that "mapping does not have to be done in school or during the school day in order to be effective," the financial burden associated with mapping, and the high skill level required to provide mapping services. *Id*. at 31-32. Similarly, the defendants argue that the exclusion of mapping is neither arbitrary nor capricious because the Department considered the relevant factors leading to its decision and articulated a rational connection between those factors and the choice made. *Id.* at 34-40. The plaintiffs disagree, arguing that each of the rationales that the defendants advance fails to support the Department's interpretation of the statute. Pls.' Mot. at 27-30.

In an analogous IDEA case, *Irving Independent School District v. Tatro*,[11] the Supreme Court held that the Department's interpretation of the medical services clause of the definition of "related services" was permissible, noting that "the Secretary could reasonably have concluded that [the clause] was designed to spare schools from an obligation to provide a service that might well prove unduly expensive and beyond the range of their competence." 468 U.S. at 892; *see*

---

[11]     The *Tatro* Court considered whether the provision of clean intermittent catheterization constituted a "related service" under the Education of the Handicapped Act, the statute that preceded the IDEA. *Irving Indep. Sch. Dist. v. Tatro*, 468 U.S. 883, 886 (1984). It did not apply the *Chevron* test, but the plaintiffs correctly observe that by analyzing whether the rule was a permissible construction of the statute, the Court's inquiry was essentially equivalent to step two of the *Chevron* test. *See* Pls.' Reply in Support of Their Cross Mot. for Summ. J. at 9 n.3.

*also Garret F.*, 526 U.S. at 77 (determining that "the potential financial burden imposed on participating States may be relevant to arriving at a sensible construction of the IDEA").  Here, the Department based its exclusion of mapping, in part, on a determination that cochlear implant mapping requires a level of expertise that school audiologists typically lack.  It explained:

> [T]he distinguishing factor between those services that are not covered under the Act, such as mapping, and those that are covered, such as verifying that a cochlear implant is functioning properly, in large measure, is the level of expertise required.  The maintenance and monitoring of surgically implanted devices require the expertise of a licensed physician or an individual with specialized technical expertise beyond that typically available from school personnel.  On the other hand, trained lay persons or nurses can routinely check an externally worn processor connected with a surgically implanted device to determine if the batteries are charged and the external processor is operating.

71 Fed. Reg. at 46,571.  Just as in *Tatro*, this determination represents a permissible construction of the IDEA, and the Department has adequately articulated the basis for its choice to exclude mapping services from coverage.

The Department also based its interpretation on the fact that "[a]lthough the cochlear implant must be properly mapped in order for the child to hear well in school, the mapping does not have to be done in school or during the school day in order for it to be effective."  71 Fed. Reg. at 46,569.  This is a reasonable consideration in construing the scope of IDEA coverage. *Tatro*, 468 U.S. at 894 (holding that "if a particular medication or treatment may appropriately be administered to a handicapped child other than during the school day, a school is not required to provide nursing services to administer it").  Although the plaintiffs would prefer a broader interpretation of the statute, one that covers services regardless of whether they occur at school or at other locations, that fact does not render the Department's chosen interpretation unreasonable. *See* Pls.' Mot. at 29.  The court must accept the Department's construction of the statute even if it

differs from what the plaintiffs believe would be the best interpretation.  *Ala. Educ. Ass'n v. Chao*, 455 F.3d 386, 396 (D.C. Cir. 2006) (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005)).

Because the regulations excluding mapping services from coverage represent a permissible interpretation of the IDEA and are not arbitrary or capricious, the court grants the defendants' motion for summary judgment and denies the plaintiffs' motion for summary judgment on the plaintiffs' APA claim.

## IV.  CONCLUSION

For the foregoing reasons, the court denies the defendants' motion to dismiss the plaintiffs' IDEA claim, grants the defendants' motion for summary judgment on the plaintiffs' APA claim and denies the plaintiffs' cross-motion for summary judgment.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 29th day of September, 2008.


RICARDO M. URBINA
United States District Judge